George HAMM, Plaintiff-Appellant,

v.

DeKALB COUNTY, and Pat Jarvis, Sheriff, Defendants-Appellees.

No. 84–8783.

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1985.

Appeal from the United States District Court for the Northern District of Georgia.

Before RONEY and HILL, Circuit Judges, and PITTMAN *, District Judge.

PITTMAN, District Judge:

The plaintiff-appellant George Hamm (Hamm) brought this action against defendants-appellees DeKalb County (County) and Pat Jarvis, Sheriff of DeKalb County (Sheriff), seeking damages for the allegedly unconstitutional conditions existing at the DeKalb County Jail during his incarceration there. He alleged that the jail was overcrowded, that the conditions were unsanitary, that the food service was unsanitary, and that the medical care was inadequate. A partial summary judgment was granted to the County. There followed a nonjury trial on the remaining issues. The district

court found no constitutional deprivation and entered judgment in favor of both defendants. On appeal, Hamm contends that the district court applied incorrect rules of law to the merits of his claims, that its finding that he suffered no actual injury was clearly erroneous, that it erred in granting a partial summary judgment in favor of the County, and that it should have entered a default judgment against the Sheriff. Because this court finds no prejudicial error in the district court's decisions, we affirm the judgment of the district court.

## I. FACTUAL BACKGROUND

Hamm was incarcerated in the DeKalb County Jail for various periods during 1979 through 1982. The parties agree that the periods of incarceration pertinent to this appeal are February 11, 1980 to April 14, 1980 and September 23, 1980 to May 20, 1981. These periods of incarceration include periods both before and after Hamm's conviction.

The County provides funding for the jail and is involved in establishing the general policies, practices, and procedures under which the jail operates. The jail is supervised by the Sheriff and the DeKalb County Board of Commissioners. They set the general policies, practices, and procedures which were responsible for the conditions present at the jail during Hamm's incarceration, excepting Hamm's claims as to medical treatment.

During Hamm's incarceration there, the jail's population at times exceeded the facility's design capacity. As a result of the overpopulation, at times Hamm slept on an eating table or on a mattress placed on the floor. Often the floor and the linens provided were unsanitary.

The district court found that the food occasionally contained foreign objects and that the jail often failed to meet Georgia Department of Human Resources Food Preparation Standards. It nonetheless

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

found that the jail met the inmates' nutritional needs by serving three meals a day, consisting of a total of 2,600 calories. It also found that the food service did not cause Hamm to become seriously ill.

Hamm also alleged that he received inadequate medical care while at the jail. He testified that although he signed the sick call list on numerous occasions in an effort to see a physician concerning various health problems, he never saw a doctor other than a psychiatrist. Other evidence indicates that he saw a doctor on at least one occasion. After signing the sick call list, Hamm ordinarily either saw a nurse or was sent unidentified medication by the nurse. He often received aspirin or medication containing aspirin even though he claims he had advised jail officials that he was allergic to aspirin. Hamm also testified that he became afflicted with a rash while incarcerated at the jail and that he was unable to obtain appropriate medical treatment of the rash.

Hamm claims he suffered from schizophrenia prior to his incarceration, and he continued to experience schizophrenia while in the County jail. He testified that before his incarceration he saw a psychiatrist once or twice a year, took thorazine and mellaril as prescribed by the psychiatrist, and attended group therapy. He testified that he saw a psychiatrist about nine days after entering the County jail and about every four months after that. The record shows that the County provided for a psychiatrist to visit the jail once a week to interview patients and potential patients as he deemed necessary. This visiting psychiatrist continued prescribed medications similar to that Hamm had taken prior to his incarceration. Hamm alleged that the conditions at the County jail aggravated his mental problems and caused him to suffer a mental breakdown.

## II.  PROCEDURAL HISTORY

Hamm filed this action against the County alleging that his constitutional rights had been violated as a result of the totality of the conditions at the County jail, including the overcrowding, the unsanitary manner in which the food was served, and the inadequacy of the medical care he received. He filed the suit pro se and in forma pauperis and sought damages under 42 U.S.C. § 1983. Hamm subsequently sought leave to amend his complaint to add Sheriff Jarvis as a defendant. His motion was granted, and the complaint was amended. After he failed properly to serve the complaint on the Sheriff, Hamm requested and received court appointed counsel. On October 25, 1982, Hamm's counsel served the Sheriff with several documents.

After the Sheriff failed to file responsive pleadings, Hamm on April 4, 1983 filed a motion for default judgment against the Sheriff. The Sheriff on April 21, 1983 responded to the motion, noting that he had not been served with a complaint. He also filed on that date a motion for leave to file defensive pleadings, attaching his answer and response to that motion. In an order dated June 8, 1983, the district court denied Hamm's motion for default judgment, granted the Sheriff's motion to file defensive pleadings, and gave the Sheriff fifteen days in which to respond to the complaint. The Sheriff did not file an additional response in order to comply with the court's order, and Hamm on September 9, 1983 filed a second motion for default judgment. The Sheriff filed a response to the motion noting that responsive pleadings had been attached to the motions he filed April 21, 1983. The district court denied the motion for default judgment and held that the pleadings filed April 21, 1983 constituted compliance with the court's order of June 8, 1983.

The district court then granted summary judgment in favor of the County on Hamm's medical care claims. In a lengthy discussion of the medical care Hamm received at the jail, the court implied that any deficiency in Hamm's medical treatment did not rise to constitutional proportions. Nonetheless, the court rested its grant of summary judgment on this issue on the absence of an official policy or custom through which the county might be liable for Hamm's grievances. *See Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611

(1977). The court denied the County's motion for summary judgment as it pertained to the issues of overcrowding and the adequacy of the jail's food service.

The case then went to trial with the claim of inadequate medical care pending against the Sheriff alone and the claims of overcrowding and inadequate food service pending against both the Sheriff and the County. Following a nonjury trial, the district court found from the bench and without written findings that Hamm failed to show by a preponderance of the evidence that the Sheriff was deliberately indifferent to Hamm's serious medical needs. The court subsequently entered written findings and conclusions on the other claims. It found that the jail population did exceed the jail's design capacity and that the jail's food service practices were somewhat deficient. The court found, however, that Hamm did not suffer any injury or illness as a result of these conditions. The court specifically found that the conditions at the jail "did not seriously aggravate the physical and mental problems [Hamm] suffered before being incarcerated." *Hamm v. DeKalb County*, Civil Action No. C81–1415A, slip op. at 3 (N.D.Ga. July 31, 1984). The court thus concluded that Hamm was not deprived of any constitutional rights and thus was not entitled to an award of damages under § 1983. Hamm appealed.

## III. ISSUES ON APPEAL

Hamm actually raises five issues on appeal, three of which concern the district court's ruling on the merits of the claims that were tried. First, he contends that the district court erred by failing to consider in combination the jail's overcrowding, its unsanitary food service, and its inadequate medical care to determine whether the totality of the conditions amounted to a constitutional deprivation. Second, he contends that the court erred in holding that proof of actual injury is a prerequisite to recovery under § 1983. Third, even if proof of actual injury is required, Hamm argues, actual injury was shown, and the district court's finding to the contrary was clearly erroneous. The fourth issue raised by Hamm is whether the district court erred in granting summary judgment in favor of the County on his medical care claims. Last, he contends that the district court abused its discretion when it denied his motions for default judgment against the Sheriff.

### A. Conditions of Confinement

### 1. What Standard Applies?

■ In order to assess Hamm's contention that the district court erred in its evaluation of the conditions imposed on him at the County jail, this court must determine the proper constitutional standards to apply to those conditions. Although the Constitution does not and the court cannot dictate the general conditions that should exist in jails and prisons, the Constitution does require conditions of confinement imposed by states to meet certain minimum standards. *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir.) (en banc), *cert. granted*, 452 U.S. 959, 101 S.Ct. 3106, 69 L.Ed.2d 970, *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). The eighth and fourteenth amendments set limits on the treatment and conditions that states may impose on prisoners. Therefore, while a court must not substitute its views for those of legislators and jail administrators and it must limit its inquiry to the issue of whether conditions of confinement violate a prohibition of the Constitution, *Bell v. Wolfish*, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979), "it is [the court's] duty, when jurisdiction is properly invoked, to protect prisoners' rights." *Jones*, 636 F.2d at 1368.

■ The eighth amendment, which applies to the states through the fourteenth amendment, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), prohibits the infliction of cruel and unusual punishment. Under that provision, states may not impose punishments that shock the conscience, involve unnecessary and wanton infliction of pain, offend evolving notions of decency, or are grossly disproportionate to the offense for which they are imposed. *Newman v. Alabama*, 503 F.2d 1320, 1330 n. 14 (5th Cir.1974),

*cert. denied,* 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975). *See Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (plurality opinion); *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Under this provision, the Supreme Court has stated, "conditions of confinement ... may make intolerable an otherwise constitutional term of imprisonment." *Ingraham v. Wright,* 430 U.S. 651, 669 n. 38, 97 S.Ct. 1401, 1411 n. 38, 51 L.Ed.2d 711 (1977) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1032 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Various conditions, "alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). On that basis, courts hold that states violate the eighth amendment if they are deliberately indifferent to a prisoner's serious medical needs, *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292, or if they fail to provide prisoners with reasonably adequate food, clothing, shelter, and sanitation. *Newman v. Alabama,* 559 F.2d 283, 286 (5th Cir.1977); *rev'd in part on other grounds sub nom Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Gates v. Collier,* 501 F.2d 1291, 1301 (5th Cir.1974).

Part of Hamm's claim arises under the eighth amendment. The district court's finding that Hamm's incarceration at the jail ended on February 8, 1981—the date of his conviction—is clearly erroneous. The parties agree that Hamm was in the jail at least until May 20, 1981; and jail records discussed at trial indicated that he was in the jail intermittently at least through December, 1981 and perhaps February, 1982. It is clear, therefore, that the conditions about which Hamm complains were imposed on him both before and after his conviction. The district court correctly applied the appropriate eighth amendment standards to the period following Hamm's conviction and its conclusions were not clearly erroneous.

■ The eighth amendment, however, applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime. "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham,* 430 U.S. at 671–72 n. 40, 97 S.Ct. at 1412–13 n. 40. Conditions of confinement imposed prior to conviction are limited instead by the due process clause of the fourteenth amendment. *Bell,* 441 U.S. at 520 & n. 16, 99 S.Ct. at 1861 & n. 16. Since the conditions about which Hamm complains in this case were imposed on him both before and after his conviction, this court must evaluate them under both the eighth amendment and the due process clause. Moreover, since the district court applied eighth amendment standards, this court must determine the extent to which those standards differ—if any—from due process standards.

■ For the period of time Hamm was incarcerated as a pretrial detainee the claims will be considered under the due process clause since states may not punish pretrial detainees at all prior to their lawful conviction of a crime. *Bell,* 441 U.S. at 575 & n. 16, 99 S.Ct. at 1892 & n. 16. The former Fifth Circuit, sitting en banc, has stated:

> The due process clause accords pretrial detainees rights not enjoyed by convicted inmates. While a sentenced inmate may be punished in any fashion not cruel and unusual, the due process clause forbids punishment of a person awaiting trial but not yet adjudged guilty of any crime.

*Jones,* 636 F.2d at 1368. The Supreme Court in *Bell v. Wolfish* articulated the standard for determining when constraints and conditions of confinement constitute punishment thus prohibiting their imposition on pretrial detainees. The Court noted initially that the government, following an appropriate determination of probable

cause, *see Gerstein v. Pugh*, 420 U.S. 103, 111–14, 95 S.Ct. 854, 861–63, 43 L.Ed.2d 54 (1985), may detain a suspect to ensure his presence at trial. *Bell*, 441 U.S. at 533–34, 537, 99 S.Ct. at 1870–71, 1873. Such detention, the Court continued, necessarily imposes restraints and disabilities on the detainees, and "[n]ot every disability ... amounts to 'punishment' in the constitutional sense." *Id.* at 537, 99 S.Ct. at 1873. In the absence of "an express intent to punish on the part of detention facility officials," the Court stated,

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell*, 441 U.S. at 539, 99 S.Ct. at 1874. The Court stressed that the government's interest in ensuring a detainee's presence at trial is not "the *only* objective that may justify restraints and conditions once the decision is lawfully made to confine a person." *Id.* at 540, 99 S.Ct. at 1874 (emphasis in original). Legitimate restraints may stem from the state's need to manage the detention facility and maintain security. *Id.*

■ Courts have not had occasion to explore extensively the application of the *Bell v. Wolfish* standard or its relation to the eighth amendment standards, particularly as it pertains to a jail's provision of basic necessities such as food, living space, and medical care. Application of the *Bell v. Wolfish* standard to those areas is exceedingly difficult and does not provide clear results. Clearly, states forever can improve the quality and quantity of the food, living space, and medical treatment that they provide those incarcerated merely by increasing and properly administering the amount of money they spend on a detention facility. Thus, a state's decision to maintain at a reasonable level the quali-

ty of food, living space, and medical care rather than improve or increase its provisions of those necessities serves a legitimate purpose: to reasonably limit the cost of detention. It is equally clear that the due process clause does not purport to regulate the general conditions and quality of life in the country's jails, and that the courts should not attempt to make "judgment calls" to determine which of various marginally different conditions might be more appropriate. *See Bell*, 441 U.S. at 562, 99 S.Ct. at 1886; *Jones*, 636 F.2d at 1368 (courts "should not, 'in the name of the Constitution, become ... enmeshed in the minutiae of prison operations.' ") Therefore, a state's interest in reasonably limiting the cost of a detention facility is a legitimate governmental objective in the framework of the *Bell v. Wolfish* standard; and, consequently, courts in most instances may not interfere with a state's decision to provide detainees with a reasonable level and quality of food, living space, and medical care.

■ Nonetheless, there must be a minimum standard for providing detainees with basic necessities, the failure to meet which amounts to a violation of due process. A state's failure to provide any food to incarcerated detainees, for example, clearly would violate the due process protection of a pretrial detainee regardless of the state's objective. Therefore, certain legitimate state objectives may justify the imposition of certain conditions only if those conditions are not too severe. The state's interest in limiting the cost of detention, for example, ordinarily will justify the state's decision to provide detainees with a reasonable level of food, living space, and medical care. Yet that same objective will justify neither the complete denial of those necessities nor the provision of those necessities below some minimally adequate level. Due process must require states to provide pretrial detainees with some minimal level of these necessities, and the failure to provide that level of necessities violates due process—even though the conditions imposed serve some ordinarily legitimate state objective. Certainly states may not impose

1574

on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights. *See City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) ("the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."), *quoted in Aldridge v. Montgomery,* 753 F.2d 970, 972 (11th Cir.1985). The Supreme Court, however, has not set forth a standard for determining what level of necessities the due process clause absolutely requires.

This court holds that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons. The court recognizes that the limitations imposed by the eighth amendment and the due process clause arise in different contexts. Nonetheless, with respect to the provision of basic necessities to individuals in the state's custody, the two provisions necessarily yield the same result. *Cf. Jones,* 636 F.2d at 1378 (relies on standards articulated in eighth amendment litigation to determine the right of pretrial detainees to an adequate diet). Distinguishing the eighth amendment and due process standards in this area would require courts to evaluate the details of slight differences in conditions. Many city and county jails have convicted prisoners and pretrial detainees. That approach would result in the courts' becoming "enmeshed in the minutiae of prison operations," a situation against which the Supreme Court has warned. Therefore, the level at which states provide pretrial detainees with basic necessities—in addition to being "reasonably related to a legitimate governmental objective"—must meet the standards applied under the eighth amendment prohibition on cruel and unusual punishment, i.e. they must furnish the detainees with a reasonably adequate diet and living space, and with reference to medical needs, they must not be deliberately indifferent to detainees' serious medical needs. Life and health are just as precious

to convicted persons as to pretrial detainees. The standard in regard to medical care in determining a violation of the eighth amendment is *deliberately indifferent.* The standard to measure the state's duty under the due process clause for pretrial detainees for medical care can equally and fairly be measured by the same standard.

In *Goodson v. City of Atlanta,* 763 F.2d 1381 (11th Cir.1985), a panel of this court affirmed a judgment based on a jury verdict in favor of a pretrial detainee. The court observed that the evidence was sufficient to support a determination that plaintiff "was denied his rights to due process of law in violation of the Fourteenth Amendment and *subjected to* cruel and unusual punishment as is prohibited by the Eighth Amendment." *Id.* at 1386 (emphasis added). The court went on to discuss pretrial detainees and convicted inmates as distinct groups. We do not view the quoted language of *Goodson* as holding that pretrial detainees' rights are established by the eighth amendment. We see the *Goodson* decision as consistent with our holding today that, with respect to basic necessities of life, the fourteenth amendment rights of detainees can be defined by reference to the eighth amendment rights of convicted inmates.

2. *Applying the Standards to this Case*

Hamm does not contest the district court's factual findings concerning the overcrowded conditions and the quality of the food service at the County jail. He contends, however, that the district court erred in holding that these conditions did not amount to constitutional deprivations. Even if the various conditions standing alone do not amount to constitutional deprivations, Hamm argues, the overcrowding, the inadequate food service, and the inadequate medical care combined to make the totality of the conditions unconstitutional. This court disagrees.

To recover on his claim of inadequate medical care, Hamm had to prove

that jail officials engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. *Accord, Aldridge*, 753 F.2d at 972. Essentially, Hamm claims that medication was prescribed for him without proper examination, authorization, and review by a physician. He also claims that he was not treated for a rash on his foot. The evidence supporting these claims, however, was sparse. Hamm presented no expert or other evidence that the supervision and authorization under which he was prescribed medication failed to meet appropriate professional standards. The only evidence concerning the rash was Hamm's own testimony. The Sheriff, on the other hand, presented medical records which showed that Hamm made numerous visits to the jail's infirmary where he was usually treated by the registered nurse on duty there. The records indicate that a physician occasionally examined Hamm as well. The jail's medical staff entertained a wide variety of complaints from Hamm and prescribed several types of medication for him. The record also shows that a psychiatrist examined Hamm at the jail and prescribed medication for him. This evidence shows that Hamm received significant medical care while at the jail. Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference. *See Bass v. Sullivan*, 550 F.2d 229, 231–32 (5th Cir.), *cert. denied*, 434 U.S. 864, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977); *accord, Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (1st Cir.1981) ("Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law."). The only medical problem alleged to have gone untreated was Hamm's rash, and the district court had ample factual grounds on which to find that Hamm failed to prove on this allegation deliberate indifference to his serious medical needs. The district court was not clearly erroneous in holding that Hamm did not meet his burden of proof on this issue.

■ The district court was not clearly erroneous in holding that the food served at the jail met constitutional requirements. The Constitution requires that prisoners be provided "reasonably adequate food." *Jones*, 636 F.2d at 1378; *Newman*, 559 F.2d at 286. "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977). The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation. *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir. 1974); *Sinclair v. Henderson*, 331 F.Supp. 1123, 1126 (D.La.1971), *quoted in Freeman v. Trudell*, 497 F.Supp. 481, 482 (E.D.Mich. 1980). The district court applied the appropriate standards on this issue.

■ The district court likewise applied the correct standards to Hamm's claims concerning sleeping arrangements and overcrowding at the jail. The fact that Hamm temporarily had to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation. *See Crowe v. Leeke*, 540 F.2d 740–41 (4th Cir. 1976); *cf. Bell*, 441 U.S. at 541–43, 99 S.Ct. 1875–76 (upholds the practice of "double-bunking"). In assessing claims of unconstitutionally overcrowded jails, courts must consider the impact of the alleged overpopulation on the jail's ability to provide such necessities as food, medical care, and sanitation. *See Rhodes*, 452 U.S. at 347–48, 101 S.Ct. at 2399–2400. There was no evidence that the conditions were imposed arbitrarily. The district court was not clearly erroneous in finding these conditions did not rise to constitutional violations.

■ Neither was the totality of conditions unconstitutional. Although the district court did not expressly address Hamm's medical care claims in combination with his other claims, it is clear from the district court's findings on the individual claims that the conditions—in combina-

tion—did not fall below constitutional standards. The district court should have expressly considered the claims together, *cf.* *Ruiz v. Estelle,* 679 F.2d 1115, 1139–40 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983) (espousing a "totality of conditions" test). Its failure to do so was not prejudicial error. The district court was not clearly erroneous in holding the several individual conditions and implying the totality of the conditions under which Hamm was confined were constitutional.

### B. *Proof of Actual Injury*

Since this court holds that the conditions of Hamm's confinement were not unconstitutional, it need not address his contention that the district court erroneously made proof of actual injury a prerequisite to recovery under § 1983.

### C. *The County's Summary Judgment on the Medical Care Claims*

The district court did not commit prejudicial error by entering summary judgment in favor of the County on Hamm's medical care claims. Hamm presented no supported allegation to link his claims to any official policy or custom. Although jail officials could allow a facility to become so overcrowded that proper medical care could no longer be provided, Hamm did not support such an allegation in this case. His complaints concerned specific flaws in the treatment afforded him, and they were not attributable to official policy or custom.

Even if the summary judgment was erroneous, it was not prejudicial. Hamm made the same medical care claims against the Sheriff and litigated them fully. The claims were in such a posture that the County could not have been liable without the Sheriff being liable as well. The district court found the medical care afforded Hamm met constitutional requirements and this court has held it was not clearly erroneous in these findings. The court also has stated that under the district court's finding no constitutional violation occurred.

### D. *Hamm's Motions for Default Judgment*

The entry of a default judgment is committed to the discretion of the district court, *see Mason v. Lister,* 562 F.2d 343, 345 (5th Cir.1977); C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2685 (1983); and the district court did not abuse its discretion in denying Hamm's motions for a default judgment against the Sheriff in this case. Although Hamm's attorneys served the Sheriff with several documents on October 25, 1982, the parties disagreed whether a complaint was included. The district court found that there was "convincing evidence" that the complaint was not served at that time and that it still had not been served when Hamm first moved for a default judgment. Since the district court found that Hamm had not been prejudiced, its denial of Hamm's first motion for a default judgment was well within its discretion. The denial of Hamm's second motion for a default judgment likewise was appropriate. As the district court found, the Sheriff's answer and response actually were filed prior to the motion for default and within the time set by the court.

## IV. CONCLUSION

Since this court finds no prejudicial error in the district court's decision and since the conditions of Hamm's confinement at the DeKalb County Jail were not unconstitutional, the judgment of the district court is AFFIRMED.