Nancy Katherine YOUNG

v.

CITY OF ATLANTA; H.L. Tucker, Individually and as a Police Officer; A.J. Ferguson, Individually and as a Police Officer; Jane Doe, Individually and as a Police Officer.

Civ. No. C85–3006.

United States District Court, N.D. Georgia, Atlanta Division.

April 10, 1986.

William L. Hazleton, Hazleton & Sweet, Atlanta, Ga., for plaintiff.

Marva Jones Brooks and Georgie R. Ference, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

In this action arising from her arrest for traffic offenses, Plaintiff asserts causes of action under 42 U.S.C. § 1983 for alleged violations of her Fourth and Fourteenth Amendment rights, as well as pendent state claims for false arrest, malicious prosecution, and false imprisonment. Presently before the court is Defendants' motion for summary judgment.

The following facts are undisputed. On April 11, 1984, at approximately 10:00 a.m., Plaintiff was driving her car in the City of Atlanta when the car in front of her stopped. Plaintiff, an attorney, was returning from a business meeting to her office in Douglasville, Georgia. She was in the far right hand lane on Piedmont Avenue, when the car in front of her started to make a turn, but stopped before completing the turn. Plaintiff could not stop, and swerved into the next lane, where she collided with a vehicle in that lane. She then swerved back into the right lane, colliding with the car in front of her which was turning, and then went off the road and down an embankment, striking a light post and a parked car in the parking lot of the Hansel and Gretel Nursery School.

Plaintiff sustained minor injuries in this accident, and remained in her car until Defendant H.L. Tucker, a City of Atlanta police officer, arrived at the scene of the accident in answer to a call. Plaintiff provided him with her driver's license and her insurance card, and explained what hap-

pened. Tucker talked with various other people who were present. Plaintiff then spoke to Ann Williams, the owner or manager of the nursery school. Plaintiff asked Ms. Williams to obtain the names and addresses of all the people who were involved in the accident. Ms. Williams made this list, photocopied it at the school, and gave a copy to everyone involved, including Plaintiff. Plaintiff also provided the owners of the vehicles with her name and address. Ms. Williams then offered to allow Plaintiff to make phone calls from the nursery school. Before Plaintiff could enter the nursery school to make the phone calls, however, Officer Tucker arrested her and directed her to sit in the back of his squad car until an ambulance came.

Officer Tucker charged Plaintiff with four statutory violations. Plaintiff was charged with violating O.C.G.A. § 40–6–272, entitled "Duty Upon Striking Unattended Vehicle." That section provides:

(a) The driver of any vehicle which collides with any vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicious place in the vehicle struck a written notice giving the name and address of the driver and the owner of the vehicle doing the striking.

(b) Any person who fails to comply with the requirements of subsection (a) of this code section shall be guilty of a misdemeanor.

Plaintiff was also charged with violating O.C.G.A. § 40–6–273, entitled "Duty Upon Striking Fixture." That section provides:

The driver of any vehicle involved in an accident resulting only in damage of a fixture legally upon or adjacent to a highway shall take reasonable steps to locate and notify the owner or person in charge of such property of such fact and of his name and address and of the registration number of the vehicle he is driving and shall, upon request and if available, exhibit his operator's license.

Plaintiff was also charged with violating O.C.G.A. § 40–6–48(1), entitled "Driving on Roadways Laned for Traffic." That section provides:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this code section, shall apply:

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety....

Plaintiff was further charged with violating O.C.G.A. § 40–6–49(a), entitled "Following Too Closely." That section provides:

(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon and the condition of the highway.

\*   \*   \*   \*   \*   \*

(d) Vehicles which approach from the rear any other vehicle or vehicles stopped or slowed to make a lawful turn shall be deemed to be following for purposes of this code section.

In addition, Plaintiff was charged with violating Atlanta City Code § 13–2288, entitled "Vehicle Leaving Street or Roadway." That section provides that "no driver of any vehicle shall operate it in such a manner as to enter or leave any street or roadway except at an intersection or at an alley or private drive."

When Officer Tucker charged Plaintiff with these traffic violations, he did not know if she had informed the owner of the parked car of her identity or if Plaintiff had informed the owner of the light pole of her identity. There is no evidence that Plaintiff had failed to discharge these duties. Tucker has testified that Plaintiff cooperated with him at the scene of the accident, that there was no smell of alcohol on her breath, that there was no indication that liquor, drugs or intoxicants were in-

volved, and that there was no indication that Plaintiff intended to leave the scene of the accident. Tucker had no doubt about Plaintiff's willingness or ability to appear in court as charged. Plaintiff had her driver's license with her, and because her license was valid and readable, and because nothing about Plaintiff made him suspicious, Tucker asked Plaintiff for no further identification to confirm her address. Further, Plaintiff's vehicle was impounded and towed away soon after her arrest, and Tucker was therefore not concerned about Plaintiff's getting back in her car and driving in a reckless manner.

Because of the number of the charges and the dangerousness of the accident, however, Tucker thought that arrest might be appropriate. It is the general policy of the Department of Public Safety that police officers will not arrest traffic offenders in most circumstances. This policy directs officers to cite traffic violators with a copy of the charges against them instead of physically arresting them, unless there is some indication that a violator may not appear in court or that the person is a potentially dangerous driver. Specifically, § 2.1.2 of the Atlanta Bureau of Police Services Field Manual provides that:

Arrest—Bondable Traffic Offenses other than Driving Under the Influence

1. An officer may not make a physical arrest for a traffic violation, with the exception of a DUI charge, without supervisory approval.

2. The purpose of arresting and requiring the posting of a bond by the violator is:

a. To ensure the appearance of the violator in court.

b. To remove from the street any reckless, incompetent, and potentially dangerous driver.

3. A superior officer may authorize a physical arrest where one or more of the following criteria is present:

a. When a violator has no driver's license, and no identification that will confirm the address of the driver.

b. When a violator is driving a vehicle while his/her driver's license is suspended or revoked.

c. When the violator has committed three or more *hazardous moving violations* in one driving incident.

d. Leaving the scene of an accident.

(Emphasis in original). Pursuant to the Bureau's policy not to make arrests on traffic-related charges without a supervisor's approval, Tucker contacted Lt. A.J. Ferguson before placing Plaintiff under arrest. There is a dispute as to whether Lt. Ferguson came to the scene of the accident as Tucker's supervisor, or whether Ferguson actually gave Tucker permission to arrest Plaintiff and require her to post a bond.

In any case, Tucker arrested Plaintiff on the five above-cited charges, and informed her that she would have to post bond. However, because of her injury she was taken to Grady Hospital immediately by ambulance. At Grady Hospital, Plaintiff was turned over to Bureau of Corrections officers, along with the citations and paperwork. Officer Tucker then left the hospital and had no more involvement in these events.

Once at the hospital, Plaintiff was escorted to the detention unit. Plaintiff was placed on a stretcher, and one wrist and one ankle were handcuffed to the stretcher. A female detention officer patted Plaintiff down. Plaintiff remained on the stretcher in the examining room for one or two hours, and was then taken to the x-ray unit. Plaintiff's cuffs were removed for her x-rays, but were replaced immediately afterward. Plaintiff remained cuffed, sitting in a hallway, for several hours while the x-rays were processed. After the x-ray results were received, a detention officer returned to Plaintiff, and escorted her to a holding cell. Finally, Plaintiff was escorted, still cuffed on her wrists and ankles, from the holding cell to a police van. At this point, Plaintiff was taken to the pretrial detention center, where she was booked and released.

Plaintiff appeared in the Atlanta traffic court on the five charges on May 8, 1984. She plead not guilty on each charge. The traffic court found her guilty of the charge of "Following Too Closely" and imposed a $50 fine. The other charges were dismissed.

Plaintiff alleges that her physical arrest and her subsequent treatment as a physical arrestee violated her constitutional rights as guaranteed by the First, Fourth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983. Plaintiff does not allege that any physical injuries resulted from these events, but seeks damages for the humiliation and embarrassment which she endured by being forced to wear handcuffs and manacles in public view, for several hours, while in Grady Hospital.

In their motion for summary judgment, Defendants first argue that Plaintiff's arrest was constitutionally and statutorily authorized. They point out that Plaintiff was actually found guilty of the offense of "Following Too Closely," and that probable cause therefore obviously existed to support that charge and the attendant arrest. Plaintiff responds that even though she was found guilty of that charge, her physical arrest and restraint were still constitutionally impermissible under the circumstances.

Modern cases construing the Fourth Amendment reflect the "ancient common-law rule" that a police officer may make a warrantless arrest "for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there [are] reasonable grounds for making the arrest." *United States v. Watson*, 423 U.S. 411, 418–19, 96 S.Ct. 820, 825, 46 L.Ed.2d 598 (1976); *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir.1985); *cf. King v. City of Fort Wayne*, 590 F.Supp. 414, 422–24 (N.D.Ind.1984) (no justification for warrantless entry into home to seize misdemeanant suspect—"there is clear and distinct line drawn between misdemeanor offenses and felony offenses" for Fourth Amendment purposes); *United States ex. rel. LaBelle v. LaVallee*, 517 F.2d 750 (7th Cir.1975) (even though misdemeanor not committed in presence of arresting officer,

if probable cause for arrest on related felony offense existed at time of misdemeanor arrest, warrantless arrest was lawful); *Chaney v. Wainwright*, 460 F.2d 1263 (5th Cir.1972). The *Watson* Court also noted that this has been the prevailing rule under state constitutions and statutes.

■ Exceptions to the common-law rule are "few in number and carefully delineated." *United States v. United States District Court*, 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972). The police bear a heavy burden when attempting to demonstrate that some urgent need, or exigency, justifies a warrantless arrest for a crime not committed in their presence. The Supreme Court has recognized only a few such emergency conditions. For example, the police may arrest a suspect in order to protect the public from crimes which "endanger life or security." *McDonald v. United States*, 335 U.S. 451, 459, 69 S.Ct. 191, 195, 93 L.Ed. 153 (1948). However, judicial circumspection "in finding exigent circumstances ... is especially appropriate when the underlying offense ... is relatively minor." *Welsh v. Wisconsin*, 466 U.S. 740, 752–53, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743 (1984). In *Welsh*, the Court held that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *Id.* 466 U.S. at 752–53, 104 S.Ct. at 2099, at 745.

In accordance with these rules, Georgia statutory law authorizes law enforcement officers to make warrantless arrests if the offense is committed in their presence, the offender is endeavoring to escape, or "for other cause if there is likely to be a failure of justice for want of a judicial officer to issue a warrant." O.C.G.A. § 17-4-20; *Finch v. State*, 101 Ga.App. 73, 112 S.E.2d 824 (1960).

Two other Georgia statutes apply these principles so as to obviate the need for physical arrest and incarceration for routine traffic violations. O.C.G.A. § 17-4-23(a) establishes a procedure whereby routine traffic offenders are arrested by cita-

tion.[1] That section requires that when a violation of any law or ordinance governing the operation of a motor vehicle results in an accident, the arresting officer shall issue the offender a citation enumerating the charges and the date upon which the offender is to appear and answer the charges. A Georgia traffic offender may only be physically arrested if, following citation for his offense, the offender fails to appear in court, O.C.G.A. § 17–4–23(b), or if the arresting officer has personal knowledge that the offender was intoxicated to the extent that he was incapable of driving safely, *Griggs v. State*, 167 Ga.App. 581, 307 S.E.2d 75 (1983), or if one of the other factors of O.C.G.A. § 17–4–20 is present. Furthermore, O.C.G.A. § 17–6–11(a) provides that any person arrested for a traffic violation, except a violation for which a license may be suspended for a first offense, may deposit his driver's license with the arresting officer in lieu of bail or incarceration. This statute states that "a receipt for such license ... shall be given to such person by the arresting officer, and thereafter said person shall be permitted to use the receipt to operate a motor vehicle ... during the pendency of the case in which the license was deposited...."

■ Officer Tucker arrested Plaintiff pursuant to § 2.1.2(3)(c) of the Field Manual, which allows arrest with a supervisor's approval for three or more "hazardous moving violations." This section does not conflict with the Fourth Amendment by providing for the physical arrest of misdemeanants under exigent circumstances, where probable cause exists. The state has a valid interest in protecting the public by removing incompetent or dangerous drivers from the streets which may be exercised under such circumstances. Because the policy reflected in § 2.1.2(3)(c) is facially constitutional, summary judgment in favor of the City is granted on the Fourth Amendment claim under § 1983. *See Monnell v. New York Department of*

*Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ However, Officers Tucker and Ferguson are not entitled to summary judgment on the Fourth Amendment § 1983 claim, because the record before the court does not affirmatively establish that they properly applied § 2.1.2(3)(c). Tucker had not personally witnessed Plaintiff's moving violations, nor is there clear evidence that he or Officer Ferguson had good reason to believe that such violations were hazardous. The record reflects no apparent exigent circumstances requiring Plaintiff's arrest.

Neither does the record affirmatively establish that Tucker and Ferguson are immune from any liability because they acted in good faith in arresting Plaintiff. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) states the standard for qualified immunity as follows:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The record reflects that Ferguson and Tucker knew of the City's policy, which obviously concerns the constitutional rights of citizens, and the record leaves open the possibility that one or both of them chose to disregard it. There is also a dispute as to whether Lt. Ferguson ever approved Plaintiff's physical arrest, even though § 2.1.2(3) specifically provides that supervisory authorization is required prior to arrest. Summary judgment on the Fourth Amendment § 1983 claim against the officers is therefore inappropriate.

Defendants next contend that the City's use of handcuffs and ankle cuffs on Plaintiff while she was at Grady Hospital did not violate her substantive due process rights under the Fourteenth Amendment, as these restraints did not amount to "pun-

---

1. O.C.G.A. § 40–6–1 classifies traffic offenses as misdemeanors. *Cf. Boss v. State,* 152 Ga.App. 169, 171, 262 S.E.2d 527 (1979) (in order to

constitute a crime in the State of Georgia, a particular act or conduct must be described as such by state statute).

ishment" within the meaning of *Bell v. Wolfish*, 441 U.S. 520, 536, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Accordingly, Defendants claim that they are entitled to judgment on Plaintiff's substantive due process claims asserted under § 1983.

In *Bell*, the Supreme Court articulated the standard for determining when constraints and conditions of confinement constitute punishment, thus prohibiting their imposition on pretrial detainees. The Court noted that pretrial detention necessarily imposes restraints and disabilities on detainees, but that "[n]ot every disability ... amounts to 'punishment' in the constitutional sense." *Id.* at 537, 99 S.Ct. at 1873. In the absence of an "express intent to punish on the part of detention facility officials," the Court stated,

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court may permissably infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees....

*Id.* at 539, 99 S.Ct. at 1874. The Court further noted that the state's need to manage detention facilities, maintain security, and ensure the accused's presence at trial are legitimate governmental objectives justifying reasonable restraints. *Id.* at 540, 99 S.Ct. at 1874–75.

The Eleventh Circuit recently applied the *Bell v. Wolfish* standard, and addressed the issue of its relation to Eighth Amendment standards, in *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir.1985). That court held that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Id.* at 1574. *See also Goodson v. City of Atlanta*, 763 F.2d 1381, 1386 (11th Cir.1985). The *Hamm* court further stated that:

> the level at which states provide pretrial detainees with basic necessities—in addition to being "reasonably related to a legitimate governmental objective"— must meet the standards applied under the eighth amendment prohibition on cruel and unusual punishment, i.e. they must furnish the detainees with a reasonably adequate diet and living space, and ... they must not be deliberately indifferent to detainees' serious medical needs.

*Hamm, supra,* at 1574.

■ The court concludes that the City's policies of using wrist and ankle cuffs on pretrial detainees at Grady Hospital has a rational basis, and that the record does not support a claim that the City was "deliberately indifferent" to Plaintiff's medical needs while she was at Grady. Plaintiff was restrained pursuant to the Bureau of Correctional Services' Standard Operating Procedures. Procedure No. 81–45–SOP–BCS, pertaining to the "handling of detained prisoners" at Grady Hospital, provides that "prisoners will be handcuffed and leg-ironed to wheelchair, and delivered to the proper clinic for treatment." Procedure No. 82–23–SOP–BCS provides that "restraining devices shall be used for the prevention of escape, inmate self-injury or injuries to staff and other inmates, or damage to property."

Plaintiff contends that these procedures for the use of physical restraints on arrestees are excessive and not reasonably related to a legitimate goal.[2] However, the court finds that Defendants' use of wrist and ankle cuffs upon pretrial detainees serves "a legitimate nonpunitive governmental objective." *Wolfish*, at 539. As

---

**2.** It does not appear that Plaintiff is challenging the Bureau's pretrial detention system as applied to her, but rather that she is challenging the Bureau's general practice of restraining pretrial detainees while they are at Grady Hospital. Even if Plaintiff is raising a challenge to the system as applied to her, however, such a challenge is without merit, as the Bureau cannot be expected to make a security risk classification of pretrial detainees who are brought to Grady for emergency treatment and remain there only a short time.

shown by the affidavit of Tom Pocock, deputy director of the Bureau's Pretrial Detention Division, the Bureau of Corrections must utilize restraints because pretrial detainees are brought directly to the hospital without prior classification at the pretrial detention center. The pretrial detention center will not accept any injured prisoner, but requires that such prisoners be taken directly to Grady Hospital. At Grady, corrections officers accept custody of detainees and see that they are taken to the appropriate clinic. There are no separate clinics or facilities for detainees, however, and they are treated in the public areas of the hospital. Since there are no separate treatment rooms, the only means of maintaining detention is by attendance of corrections officers and the use of physical restraints. Further, since most detainees treated at Grady are brought there directly from the streets, there is no opportunity to screen and classify them to determine the potential for escape and for harm to others. The Bureau must assume that there is a possibility of a detainee escaping, harming himself or others, or doing damage to property, as the nature of the offense charged against a detainee does not necessarily provide a valid indication of a person's potential for escape or violence. These considerations underly the Bureau's Standard Operating Procedure for the use of physical restraints by the pretrial detention center. The use of physical restraints, as directed in the procedures, is also intended to allow efficient use of corrections officers and to avoid the expense of building a hospital detention facility or of requiring a corrections officer to accompany each detainee through the frequently lengthy hospital treatment process.

As Plaintiff does not argue that Defendants were "deliberately indifferent" to her needs, and the City's policy of restraining arrestees at Grady Hospital has a rational basis, Plaintiff has failed to establish a substantive due process violation under either *Wolfish* or *Hamm.* Summary judg-

ment on Plaintiff's substantive due process claim under § 1983 is therefore appropriate.[3]

■ Defendants further argue that Plaintiff's claims under state law against the City of Atlanta are barred for failure to give ante litem notice of the claim, as required by O.C.G.A. § 36–33–5. That statute requires that anyone with a claim against a municipal corporation "present the claim in writing to the governing authority of the municipal corporation" within six months of the happening of the event giving rise to the claim. This requirement is a statute of limitations and satisfaction of the requirement is a condition precedent to maintaining a law suit on the claim. *Shaefer v. Mayor and Council of the City of Athens,* 120 Ga.App. 301, 170 S.E.2d 339 (1969). It is undisputed that Plaintiff failed to give the required notice of her state tort claims against the City of Atlanta. Therefore, her state tort claims against the City are barred as a matter of law.

■ Officers Tucker and Ferguson finally argue that Plaintiff has not stated a cause of action on her state tort claims of false arrest, malicious prosecution, and false imprisonment. Where an arrest actually leads to prosecution, an action for malicious prosecution is the exclusive remedy, and an action for false arrest will not lie. *Smith v. Embry,* 103 Ga.App. 375, 119 S.E.2d 45 (1961). Plaintiff's claim of false arrest is therefore dismissed, as her complaint alleges that she was actually prosecuted.

■ The elements of malicious prosecution include (1) prosecution for a criminal offense; (2) prosecution instigated under a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of the plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff. *Medoc Corp. v. Keel,* 166 Ga.App. 615, 305 S.E.2d 134 (1983); O.C.G.A. § 51–7–40. In this case, Plaintiff was found guilty of one

---

**3.** The court notes, however, that in considering Plaintiff's Fourth Amendment claims against Officers Tucker and Ferguson, the jury will be allowed to receive evidence of the events which

took place while Plaintiff was at the hospital, as such evidence goes to show the consequences of those Defendants' alleged actions.

of the charges against her. Her claim thus fails to satisfy the third and fifth elements of malicious prosecution. Summary judgment will be granted on this claim.

 The only elements of a claim of false imprisonment are detention and its unlawfulness; malice and want of probable cause need not be shown. *Burrow v. K–Mart Corp.*, 166 Ga.App. 284, 304 S.E.2d 460 (1983); *Collins v. Sadlo*, 167 Ga.App. 317, 306 S.E.2d 390 (1983). There is clearly a question of fact as to the lawfulness of Defendants' detention of Plaintiff, as discussed above. Therefore, summary judgment will not be granted on this claim.

Accordingly, Defendants' motion for summary judgment is GRANTED as to the City of Atlanta and "Jane Doe" on all claims, and as to Officers Tucker and Ferguson on the Fourteenth Amendment, false arrest and malicious prosecution claims. The motion is DENIED as to Officers Tucker and Ferguson on the Fourth Amendment § 1983 claim and the false imprisonment claim.