91 F.3d 146
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Larry D. SMITH, Plaintiff-Appellant,
v.
H. Christian DeBRUYN, et al., Defendants-Appellees.
 Nos. 94-3286, 95-2090 and 95-2591.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 17, 1996.*
Decided July 18, 1996.
 
 Before POSNER, Chief Judge, and PELL and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Larry Smith, a level III prisoner incarcerated in Indiana, appeals the district court's dismissal of his § 1983 action. Smith was released from prison on parole in June, 1990, but was returned to prison after being arrested for a new offense and was placed in the Correctional Industrial Complex (CIC) for fifteen months. He suffers from arthritis and takes medication to alleviate its pains. While at the CIC, Smith allegedly filed numerous successful lawsuits and grievances on his own behalf and on behalf of other inmates. Smith claimed that because of the embarrassment that these suits caused, prison officials transferred him to Westville Correctional Center (WCC). Smith also alleged numerous acts by the defendants designed to harass him: the timing of his transfer (during his college term), denying him access to the courts, returning his mail for inadequate postage (he claims the postage was adequate and that paying the extra postage deprived him of the money he needed to buy personal hygiene items), reassigning his prison cell and moving him, mishandling and temporarily denying him access to his personal property during these moves, and subjecting him to unjust disciplinary reports.
 
 
 2
 At WCC, Smith found the conditions inferior to the newer CIC facilities. He described WCC as antiquated, unclean, and unsafe in violation of his Eighth Amendment rights. He also alleged inadequate medical care in violation of the Eighth Amendment. He further alleged that the defendants continued to harass him at WCC.
 
 
 3
 He brought this 42 U.S.C. § 1983 seeking monetary and injunctive relief. Because Smith is proceeding pro se, we will construe his brief liberally. Bagola v. Kindt, 39 F.3d 779, 780-81 (7th Cir.1994). We review a dismissal pursuant to Rule 12(b)(6) de novo, accepting the factual allegations of the complaint as true and viewing the allegations in the light most favorable to the non-moving party. Hughes v. Rowe, 449 U.S. 5, 10, 101 S.Ct. 173, 176 (1980); Murphy v. Walker, 51 F.3d 714, 717 (7th Cir.1995).
 
 
 4
 Smith argues that defendants retaliated against him because of his prior lawsuits and grievances by transferring him, denying him desirable jobs and housing, mishandling his property, treating him more harshly than other prisoners, issuing unjust disciplinary reports against him, and subjecting him to urine testing more often than other inmates. Actions taken against a prisoner in retaliation for the exercise of a constitutional right, such as an inmate's right to access to the courts, see Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495 (1977), can state a claim under § 1983, even when the retaliatory act itself does not violate a constitutional right. Matzker v. Herr, 748 F.2d 1142, 1151-52 (7th Cir.1984) ( citing Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.1978), cert. denied, 440 U.S. 916 (1979)). To show retaliation, Smith must allege a "chronology of events from which retaliation can be inferred," and show that retaliation was the motivating factor for the actions. Black v. Lane, 22 F.3d 1395, 1399 (7th Cir.1994); see also Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87, 97 S.Ct. 568, 575-76 (1977). We agree with the district court that Smith sufficiently alleged a chronology of events to state a claim of retaliation against the employees at CIC. He alleged that he filed numerous successful complaints against prison officials at CIC, including a tort action filed a month before his transfer, and that they may have embarrassed the prison. He then alleged that he was treated differently because of the lawsuits and then was transferred under unusual conditions--he was not accorded a warning or pre-transfer hearing. He further alleged that the stated reason for his transfer, that CIC could not adequately treat his arthritis, was pretextual. The specific acts of retaliation Smith alleged were perpetrated by the CIC staff were denial of desirable prison jobs and housing, transfer, and the intentional mishandling of his personal property.
 
 
 5
 However, Smith does not allege a chronology of events linking the defendants who were not employees of CIC with the grounds for retaliating against him. He sued numerous officials who worked as supervisors within the Indiana Department of Corrections, or worked for other prisons such as WCC. Defendant Evan Bayh is the governor of Indiana. None of these defendants were related to Smith's CIC lawsuits or embarrassed by them, and thus had no motive to harass him. Furthermore, even if the defendants within the Indiana Department of Corrections had some type of supervisory duties, they could not be held liable on the ground of respondeat superior. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995). Without an allegation that these defendants were personally involved in the circumstances creating an inference of retaliation, Smith has not shown that the acts that they committed were retaliatory. Therefore, the action against these defendants must be dismissed.
 
 
 6
 Of the remaining sixteen or so defendants who worked at CIC, it is difficult to see how they were involved in the acts Smith contests. Nonetheless, because Smith stated a claim of retaliation, it is possible that one or more of the defendants at CIC were personally responsible for the acts and motivated to retaliate. Determining which, or any, of these defendants were personally responsible is better suited to a summary judgment review than to a dismissal review. See Leatherman v. Tarrant County Narcotics Unit, 113 S.Ct. 1160, 1161 (1993). We therefore believe dismissal of the CIC employees is premature on Smith's retaliation claim.
 
 
 7
 It is difficult to tell whether Smith's complaints that his studies were impeded and that he was denied access to the courts were alleged only in the context of retaliation or if he also alleged them as independent causes of action. Because we interpret his complaint liberally, we will address these concerns as independent causes of actions as well.
 
 
 8
 We first turn to Smith's complaint that the defendants prevented him from continuing with his studies. He complains that his job assignment interfered with his studies, the lighting, noise, and furniture were not conducive to a study atmosphere, he was denied a Pell Grant by the government, the prison transfers disrupted his studies, and he was not provided a tutor to help make up for these disruptions. A prisoner does not have a constitutional right to education. See Garza v. Miller, 688 F.2d 480, 485-86 (7th Cir.1982), cert. denied, 459 U.S. 1150 (1983). Therefore, these complaints do not state a cause of action.
 
 
 9
 Smith also argues that he was denied meaningful access to the courts at WCC. He alleges that his access to the prison law library was restricted to a limited number of hours per week, the granting of passes to go to the library was unpredictable, and the facilities were poor: staffed by untrained clerks, stocked with old material, and undersized photocopiers. He also alleged that certain legal papers were lost or destroyed, presumably during his transfers. To establish a violation of the right to access to the courts, Smith must show that the conditions failed to provide him with a reasonable opportunity to research his claim and failed to assist him in preparing meaningful legal papers. Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498 (1977). He also must demonstrate actual injury. Lewis v. Casey, 1996 WL 340797 at * 4-5 (U.S. June 24, 1996).
 
 
 10
 An inmate does not have a right to a law library, legal assistance, or photocopy machines. Id. at * 4; see also Sands v. Lewis, 886 F.2d 1166, 1169 (9th Cir.1989) (a prison inmate does not have a right to photocopying services); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir.1980) (prison regulation limiting photocopies to legal materials reasonable). Furthermore, the prison may have security and institutional concerns in regulating passes to the library. See Casey, supra at * 10; Thornburgh v. Abbott, 490 U.S. 401 (1989); O'Lone v. Estate Shabazz, 482 U.S. 342, 349 (1987). Smith did not show actual injury stemming from these conditions, such as the dismissal of a complaint. See Casey, supra at * 5. Further, the inconveniences he experienced do not state a claim of denied access to the courts. Although the conditions may have been inferior to the conditions to which Smith was accustomed at CIC, Smith's access to the law library was sufficient to aid him in preparing his meaningful legal papers. See Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir.1987) (petitioner claiming a deprivation of the right to meaningful access to the courts must show a detriment caused by the challenged conduct); see also DeTomaso v. McGinnis, 970 F.2d 211, 214 (7th Cir.1992) (same).
 
 
 11
 Next, Smith raises several contentions that conditions at the prison violated the Eighth Amendment. First, he argues that he was denied adequate medical care. To establish an Eighth Amendment violation, Smith must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hudson v. McMillian, 112 S.Ct. 995, 1000 (1992); Estelle v. Gamble, 429 U.S. 97, 106 (1976). The indifference to medical needs must be substantial, demonstrating a wanton infliction of unnecessary pain. Inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical personnel do not rise to the level of a constitutional violation. Estelle, 429 U.S. at 106; Del Raine v. Williford, 32 F.3d 1024, 1031-32 (7th Cir.1994). Smith alleges that the prison provided him with no medication for his arthritis for several weeks after his transfer to WCC and the attending physician was not fluent in English. Although arthritis may be very painful, Smith's arthritis did not constitute a serious medical need under the Eighth Amendment.
 
 
 12
 He then alleged that the prison conditions violated the Eighth Amendment: the prison was unclean (soiled mattresses and poor hygiene among the prisoners), noisy, inadequately furnished and lit (making it difficult for Smith to study), drafty, cold, and unsafe. By unsafe, Smith mentions that he does not believe that his personal property was secure and that he did not feel safe from other prisoners. However, Smith does not allege that other prisoners stole or physically harmed him. It is not enough that Smith alleges that the "overall conditions" created a level of cruel and unusual punishment; he must show "specific deprivations of a single human need." Wilson v. Seiter, 501 U.S. 294, 305, 111 S.Ct. 2321, 2327 (1991).
 
 
 13
 The Constitution does not require the jail to ensure the comfort of each prisoner, but only to provide such necessities as food, medical care, sanitation, and a safe environment. Rhodes v. Chapman, 452 U.S. 337, 347-48, 101 S.Ct. 2392, 2399-2400 (1981); Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872 (1979); compare Thompson v. City of Los Angeles, 885 F.2d 1439, 1448 (9th Cir.1989) (failure to provide bed or mattress punishment) and Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir.1985), cert. denied, 475 U.S. 1096 (1986) (unsanitary food and sleeping on mattress on floor not punishment). The state's interest in limiting the cost of detention often will justify the state's decision to provide inmates with the minimally required level of food, living space, and medical care. Hamm, 774 F.2d at 1573. We do not believe that the conditions alleged rise to the level of an Eighth Amendment violation. See Lunsford v. Bennett, 17 F.3d 1574, 1579-80 (7th Cir.1994). "Inmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir.1988). Smith also does not show specific acts demonstrating that the conditions of the prison jeopardized his personal safety.
 
 
 14
 Smith lastly argues that he was disciplined unjustly. According to Smith, the prison officials assigned him to a job that interfered with his studies so Smith "protested" by not accepting the job and by insisting on a job that would be more conducive to his academic program. He was disciplined for unauthorized absence from work and sanctioned with extra duty and loss of privileges.
 
 
 15
 We review a disciplinary sanction only when the sanction implicates a liberty interest, that is, when the sanction constitutes an atypical and significant hardship on the prisoner. Sandin v. Conner, 115 S.Ct. 2293, 2298-2300 (1995); Whitford v. Boglino, 63 F.3d 527, 532 (7th Cir.1995). In Sandin, the Supreme Court found that thirty days segregation did not constitute an atypical or significant hardship, and therefore no liberty interest was infringed. Sandin, 115 S.Ct. at 2301; see also Whitford, 63 F.3d at 532 (six months segregation not infringe a liberty interest). A sanction of extra duty and loss of privileges is a less significant sanction than disciplinary sanction. Cf. 28 CFR § 541.13. It does not create a major disruption to Smith's environment or significantly change his conditions from those in the general population. Therefore, the sanction he received did not constitute the type of deprivation to which due process protections apply.
 
 
 16
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)