Janet M. DANESE, Personal Representative of the Estate of David Danese, Dec'd., Louis Danese, Daniel Danese, Pamela Danese, Margaret Danese, Thomas Danese, Frances Danese and Louis Danese, Ind., Plaintiffs,

v.

Thomas A. ASMAN, Ind. and as Chief of Police for the City of Roseville, Howard Hill, Ind. and as Sergeant and Shift Commander for the City of Roseville Police Department, Frederick Stein, Ind. and as Sergeant for the City of Roseville Police Department, Robert Peters, Ind. and as Inspector for the City of Roseville Police Department, John Roe, Ind. and as Lieutenant for the City of Roseville Police Department, Gowsoski, R. Chuchran, Cardinal, and Kenyon, Ind. and as Police Officers for the City of Roseville Police Department, Roseville Police Department, Jeannie Riesterer, Ind. and as Mayor of the City of Roseville and the City of Roseville, a municipal corp., the Roseville Fire Department, Keith Pelt, Ind. and as Rescue Truck Attendant for the City of Roseville, Terry Hawkins, Ind. and as Roseville Fire Department Ambulance Attendant, Jointly and Severally, Defendants.

Civ. A. No. 84–9797 PH.

United States District Court, E.D. Michigan, S.D.

May 22, 1987.

William G. Povlitz, Petz & Povlitz, Grosse Pointe Woods, Mich., for plaintiffs.

J. Russell LaBarge, Roseville, Mich., for defendants—Office Kenyon and City of Roseville and Officer Gowsoski.

James S. Goulding, Detroit, Mich., for defendants—Pelt and Hawkins.

John R. Secrest, John H. Cowley, Jr., Farmington Hills, Mich., for defendant City of Roseville.

Thomas E. Spencer, Grand Rapids, Mich., for defendants—Asman, Hill, Peters and Stein.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This case arises from a November 9, 1982, incident in which David Danese committed suicide by hanging himself in a cell at the Roseville City Jail following his arrest for driving while under the influence of alcohol. Plaintiffs bring this suit on their own behalf. Janet M. Danese also brings suit as the mother of David Danese

and the administrator of her son's estate. Plaintiffs seek relief pursuant to 42 U.S.C. §§ 1983 and 1985, and also seek an injunction compelling defendants to comply with various Roseville Police Departmental and Michigan Administrative Code Rules.[1]

Named as defendants are the City of Roseville, the Roseville Police and Fire Departments, the Mayor of Roseville, Jeannie Riesterer, Chief of Police Thomas Asman, Inspector for the Roseville Police Department, Robert Peters, Police Sergeants Howard Hill and Frederick Stein, and officers Gowsoski, Churchran, Cardinal and Kenyon.[2] Before the Court is a motion to dismiss on behalf of all eight police officers and a motion for partial summary judgment or dismissal filed by Mayor Riesterer, the City of Roseville and Roseville Fire Department. The Roseville Police Department has also filed a motion to dismiss, adopting by reference the brief in support of the motion filed by the Mayor, City and Fire Department.

## I.

Plaintiffs' ten-count complaint contains 151 paragraphs and fails to delineate which allegations are alleged against whom and under what constitutional provisions. Plaintiffs' apparent attempt not to inadvertently omit any potential claim renders the complaint almost unreadable. Nevertheless, a generous reading of the complaint in its entirety indicates that plaintiffs allege various constitutional claims under section 1983, as well as a claim under section 1985.

Plaintiffs allege claims under the eighth and fourteenth amendments against officers Hill, Stein, Cardinal, Churchran, Gowsoski and Kenyon for failng to provide the deceased with necessary medical treatment and to follow proper procedures in protecting the deceased from self-injury. (Am. Compl., ¶¶ 57–68, 123.)[3]

Plaintiffs allege that Reisterer, Asman, Peters and Hill violated both the eighth and fourteenth amendments by failing to properly train the police officers to recognize the risk of self-injury presented by individuals like Danese and because they failed to institute proper procedures for handling detainees who threaten self-injury. (Am. Compl., ¶¶ 121, 123 and 125). Plaintiffs further allege that Reisterer, Asman, Peters and Hill violated Danese's liberty interest in the fourteenth amendment by (1) wrongly imprisoning him against his will, and (2) unlawfully detaining him in a defective building in violation of several rules promulgated by the Michigan Department of Corrections. (Am.Compl., ¶¶ 103–109, 123, 124).[4]

Plaintiffs' attempt to hold the City and Police Department liable under (1) the eighth and fourteenth amendments for establishing a policy of inadequate training of the police officers (Am.Compl., ¶¶ 66–69),

---

1. The complaint also sets forth various pendant state law claims. These claims were dismissed in a Memorandum Opinion and Order issued on April 1, 1987.

2. Various Fire Department employees have been dismissed by stipulation of the parties.

3. Although plaintiffs allege a claim under the fifth amendment in paragraph 123 of the complaint and under the fourth and ninth amendments in paragraph 20, the complaint does not support claims under any of these three amendments. Nor do plaintiffs attempt to add any support in any of the pleadings or their responses to the various motions filed by defendants.

4. Count VI, captioned "False Imprisonment," contains more than just a state tort law claim for false imprisonment. Also included is a claim that the deceased was denied his liberty or freedom of movement by being held in a defective building. Although Count VI does not explicitly refer to the fourteenth amendment, plaintiffs' reference to a liberty interest is clearly a due process claim under the fourteenth amendment. Accordingly, although paragraph 123 refers to the eighth, as well as, the fourteenth amendments, the reference to the eighth amendment must be read as referring to the inadequate training and failure to establish proper procedures claims contained, in part, in paragraphs 121, 123 and 125.

Although Count VI also names the remaining police officers, plaintiffs do not allege that officers Kenyon, Churchran, Cardinal, Gowsoski or Sergeant Stein were responsible for any of the building defects or had the power to institute change in any way. Nor do plaintiffs attempt to provide support for such a position in any of their pleadings. Accordingly, Count VI is only applicable to Reisterer, Asman, Peters, Hill, the City and Police Department.

and (2) the fourteenth amendment for maintaining a policy of systematically violating state regulations governing the physical design of the lockup. (Am.Compl., ¶¶ 69–71, 103–109).

Plaintiffs allege that the Fire Department's failure to adequately train its employees in life saving techniques and its custom and policy of indifference ratified and condoned the deliberate indifference its employees displayed towards the deceased in failing to render any C.P.R. or other treatment which might have saved Danese's life. (Coml., ¶¶ 115–118).

Finally, plaintiffs allege that Asman and various other defendants conspired to cover up the events which led to the deceased's suicide in violation of 42 U.S.C. § 1985. Specifically, plaintiffs allege the defendants' did not allow inspection of the facilities or the release of information sought by plaintiffs in order to determine whether and to what extent the deceased's constitutional rights had been violated. (Am. Compl., ¶¶ 127–128).

## II. Police Officers' Motion to Dismiss

All eight police officers move for dismissal of the section 1983 claims pursuant to F.R.Civ.P. 12(b)(6). They contend that the complaint fails to allege the violation of any clearly established statutory or constitutional law, and that they are thus entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

To the extent plaintiffs have failed to state a section 1983 claim, defendants' qualified immunity defense is moot. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Carlson v. Conklin*, 813 F.2d 769, 770–771 (6th Cir. 1987). Accordingly, the Court will first determine whether plaintiffs have stated a sufficient claim against each of the defendants.

The Sixth Circuit recently restated the applicable standard in ruling on a motion to dismiss:

A motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint. The basic requirements for a pleading are set out in

Rule 8(a) and call for "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." In considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.; Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

*Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir.1987).

For purposes of this motion, the facts alleged by plaintiffs and which must be accepted as true, are that on November 9, 1982, Danese was arrested at approximately 2:50 a.m. by officers Churchran and Gowsoski for driving while under the influence of alcohol. Upon arrival at the Roseville jail, Danese cried intermittently and repeatedly made comments to Churchran, Goswoski and Cardinal, the officer who administered the breathalizer test, that he wished he were dead. He also discussed ways he should or could commit suicide and that he would, in fact, commit suicide. Danese further advised the officers that he was on medication for pain and that his physical condition rendered his detainment painful and uncomfortable. Danese's pain medication was taken from him by the officers.

The breathalizer tests given to Danese resulted in scores of .13% and established that Danese was legally drunk. He was then placed in a holding cell, fully clothed, and out of direct view of the supervising officer. The jail did not have a detoxification cell and the television monitor had been inoperable long before November 9.

At approximately 5:15 a.m., Danese advised Officer Cardinal that he was going to hang himself. Officer Cardinal told his supervisor, Sgt. Hill, of this threat. Sgt. Hill, shortly thereafter, left the station

without advising the only remaining supervisor, Sgt. Stein, of the threatened suicide.

Sometime between 5:35 a.m. and 5:56 a.m. Danese hanged himself with his shirt from the cross bars of his cell. Upon finding him, Cardinal, Kenyon and Stein cut Danese down and called the Fire Department. The Fire Department's rescue truck arrived at 5:59 a.m., and the Fire Department ambulance arrived at 6:02 a.m. No C.P.R. or other life saving technique was attempted by either the Police or Fire Department personnel. Danese was pronounced dead at 7:08 a.m. His blood contained 0.14% by weight of ethyl alcohol.

■ In order to sustain a claim under section 1983, the plaintiffs need only allege that the conduct complained of was committed while defendants were acting under color of state law and that the defendants conduct deprived Danese of his constitutional rights. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). Since none of the officers contest that they were acting under color of state law, the only issue before the Court is whether plaintiffs have sufficiently alleged a deprivation of Danese's rights secured by the Constitution.

## A. Carindal, Churchran, Gowsoski, Kenyon, Hill and Stein

Plaintiffs allege that the deliberate indifference of officers Cardinal, Churchran, Gowsoski, Kenyon, Hill and Stein to Danese's serious medical needs constitutes a violation of the eighth and fourteenth amendments.

In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that only "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and unwanton infliction of pain' ... proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. at 291. A complaint alleging only negligence in diagnosing or treating a medical condition is insufficient to state a valid claim under the eighth amendment. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate in-

difference to serious medical needs." *Id.* at 106, 97 S.Ct. at 292.

■ The eighth amendment's protection against cruel and unusual punishment, however, applies only to prisoners incarcerated after a criminal conviction. *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Ingraham v. Wright*, 430 U.S. 651, 664–668, 97 S.Ct. 1401, 1408–1411, 51 L.Ed.2d 711 (1977); *Galas v. McKee*, 801 F.2d 200, 205 (6th Cir.1986). Since Danese was not convicted of a crime, the eighth amendment is not directly applicable.

■ Under the due process clause of the fourteenth amendment, however, a detainee has a right to be free from punishment altogether. In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court held that a detainee's liberty interest under the due process clause proscribes conditions or restrictions during pretrial detention which amount to punishment. "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535, 99 S.Ct. at 1872. The Court held that absent proof of an intent to punish, whether a challenged condition, practice or policy rises to the level of punishment "generally will turn on 'whether an alternative purpose to which the [restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.*

Despite the simplicity of the test in *Wolfish*, the lower courts have found its application awkward when the conduct challenged involves medical treatment of a detainee. *See, e.g., Hamm v. DeKalb County*, 774 F.2d 1567, 1572–1574 (11th Cir.1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). ("Application of the *Bell v. Wolfish* standard to [basic conditions such as food, living space and medical care] is exceedingly difficult and does not provide clear results." *Id.* at 1573.) This has proved especially true in a case such as this where a detainee commits suicide and

the administrator of the deceased's estate brings a section 1983 action alleging that the suicide was a result of improper medical care, a lack of proper training and unsafe conditions.

Because of the inflexible nature of the *Wolfish* standard, several circuits, including our own, have analogized the eighth amendment rights of prisoners to those of detainees under the fourteenth amendment, and have applied the deliberate indifference standard in *Estelle* in assessing a pretrial detainee's allegations of inadequate medical care.

In *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir.1985) (*en banc*), the defendant was arrested for fraudulent use of a credit card and was booked at the Troy police station. Later that evening he was found hanging in his jail cell. *Id.* at 722. At trial, the plaintiff, the personal representative of the deceased's estate, did not argue under the *Wolfish* test that in failing to have in place proper procedures to reduce the likelihood of Robert's accomplishing the suicide, defendants intended to punish him. Rather, the plaintiff claimed that Robert's eighth amendment rights were violated by the defendants' deliberate indifference to his medical needs. *Id.* at 723.

Acknowledging that the eighth amendment was not directly applicable to the deceased, the court agreed that the protections of the eighth amendment were indirectly applicable under the fourteenth amendment:

> Roberts, as a pretrial detainee rather than a convicted prisoner, was not within the protection of the eighth amendment; however, the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict

than to one awaiting trial. *See Norris v. Frame*, 585 F.2d 1183, 1187 (3d Cir. 1978).[5]

*Id.*

At issue on appeal was what standard under the eighth amendment should be applied: negligence or deliberate indifference. The plaintiff contended that the negligence standard applied in a case involving a prison assault was the correct test. The court held that the standard in the Sixth Circuit in prison assault cases was not mere negligence but gross negligence or deliberate indifference. *Id.* at 724. More importantly, however, the court went on to state that a suicide in custody is more closely analogous to the failure to provide medical care and that the deliberate indifference standard was, therefore, the correct standard.

> Moreover, the prison assault situation is not as analogous to suicide in custody as is the failure to provide medical care. Indeed, the suicidally inclined prisoner is in need of medical care. In *Wright v. Wagner*, 641 F.2d 239, 242 (5th Cir.1981), a suicide case, the court, citing *Gamble*, used the deliberate indifference standard.

*Id.*

In an attempt to reconcile its failure to apply the *Wolfish* test and its endorsement of the indirect application of the eighth amendment to a detainee under the fourteenth amendment, the court concluded that the deliberate indifference standard is consistent with *Bell v. Wolfish*. "Although *Bell v. Wolfish* ... deals with action rather than the failure to act, if we transpose the *Bell v. Wolfish* standard to failures to act, we would also arrive at a deliberate indifference requirement." *Id.* at 725. *Cf. Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1572–1574 (11th Cir.1985), *cert.*

---

5. The court recognized earlier in its opinion that in *Wolfish* the Supreme Court had explicitly indicated that a pretrial detainee, who had not been convicted of a crime, retained at least those rights enjoyed by a convicted criminal. *Bell v. Wolfish*, 441 U.S. at 545, 99 S.Ct. at 1877.

The Supreme Court recently stated that "the due process rights of [a pretrial detainee] are at least as great as the Eighth Amendment protection available to a convicted prisoner." *City of*

*Revere v. Mass. Gen'l Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

A person, such as Danese, who was detained overnight for driving while under the influence of alcohol must also possess due process rights at least as great as a convicted criminal. Defendants present no basis for distinguishing between a pretrial detainee and an arrestee for purposes of determining the degree of protection afforded each under the due process clause.

*denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

In another *en banc* decision, the Fifth Circuit, in *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182 (5th Cir.1986) (*en banc*), also a jail suicide case, reached a result similar to that reached by the Sixth Circuit in *Roberts.* After holding that *Estelle* was inapplicable because the deceased was a pretrial detainee, the court recognized that the rights of a pretrial detainee under the fourteenth amendment are greater than the rights of a convicted prisoner under the eighth amendment.[6]

Without further explanation the court then stated that under the *Bell v. Wolfish* standard, "the defendants had a duty, at a minimum, not to be deliberately indifferent to Partridge's serious medical needs." *Id.* at 1187. Thus, although rejecting the direct application of the eighth amendment and *Estelle,* the court applied the deliberate indifference standard in *Estelle* indirectly through the fourteenth amendment.

Also like the court in *Roberts,* the *Partridge* court could detect no difference between a medical need for psychological or psychiatric treatment and the need for medical aid for physical ills.

A psychological or psychiatric condition can be as serious as any physical pathology or injury, especially when it results in suicidal tendencies. And just as a failure to act to save a detainee from suffering from gangrene might violate the duty to provide reasonable medical care absent an intervening legitimate government objective, failure to take any steps to save a suicidal detainee from injuring himself may also constitute a

due process violation under *Bell v. Wolfish.*

*Id.* at 1187 (citations omitted).

In short, whether as an indirect application of the eighth amendment[7] or as a product of the test under *Bell v. Wolfish,* in accordance with the teaching of *Roberts* the due process clause requires that certain steps be taken to protect a detainee who is suspected to be suicidally inclined. Under *Roberts,* in order to sufficiently allege a claim under the fourteenth amendment, a plaintiff must allege facts which indicate that there was deliberate indifference toward the detainee's serious need to be protected from committing suicide.

The deliberate indifference standard in *Roberts* is consistent with recent Supreme Court and Sixth Circuit decisions that consider the level of conduct necessary to constitute a violation of the due process clause. In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), an inmate of a city jail was injured when he slipped on a pillow left on a stairway by a sheriff's deputy. The Supreme Court held that the mere lack of due care on the part of a state official does not "deprive" an individual of life, liberty or property under the due process clause of the fourteenth amendment, for the touchstone of due process is protection of the individual against arbitrary action of government. The Court specifically reserved the question whether "something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protection of the Due Process Clause." *Daniels,* 474 U.S. at 334 n. 3, 106 S.Ct. at 667 n. 3.[8]

---

6. The analogy between the failure to provide medical relief to a detainee suffering from a physical ill and the failure to take steps to save a suicidal detainee from injuring himself is slightly strained since in the latter situation the harm is self-inflicted. *See, e.g., Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 n. 20 (5th Cir.1986); *Guglielmoni v. Alexander,* 583 F.Supp. 821, 827 (D.Conn.1984); *Matje v. Leis,* 571 F.Supp. 918, 930 (S.D.Ohio 1983). The Court need not address this issue, however, since defendants fail to raise it in their motion.

7. The Fourth, Seventh and Eleventh Circuits have also concluded that the eighth amendment's ban against cruel and unusual punishment is applicable to a pretrial detainee, although not necessarily with respect to a jail suicide. *Whisenaut v. Yuam,* 739 F.2d 160, 163 (4th Cir.1984); *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984); *Hamm v. DeKalb County,* 774 F.2d 1567 (11th Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

8. This question also went unanswered in *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). There, an inmate attacked and injured the plaintiff, another inmate. The plaintiff had attempted to alert the Assistant Superintendent of the prison about a threatened attack, through a written note. The note was

In *Nishiyama v. Dickson County*, 814 F.2d 277, 281–283 (6th Cir.1987) (*en banc*), the Sixth Circuit held that gross negligence is sufficient to constitute a "deprivation" of due process. There, Kathy Nishiyama was driving her car in Montgomery County, Tennessee, when she was signaled by a Dickson County Sheriff's Department patrol car to pull over to the side of the road. When she pulled her car over, Charles Hartman, the patrol car's sole occupant, approached her and beat her to death. *Id.* at 279.

Hartman, a convicted felon and inmate in the custody of the Dickson County Sheriff's Department, had been placed on "trusty" status following his transfer from state custody to the Dickson County Jail. Hartman was operating the patrol car with the permission and authorization of a sheriff and deputy sheriff of the department. Just preceeding the murder, he had dropped off the sheriff and deputy sheriff at home and was told to return to the jail. *Id.*

Plaintiffs, Nishiyama's parents, brought suit under section 1983 against Dickson County, the sheriff and deputy sheriff, alleging a substantive due process claim under the fourteenth amendment. Initially, the court determined that the practice of providing Hartman with a marked and fully equipped patrol car was action taken under color of state law which deprived Kathy Nishiyama of a constitutionally protected interest in life. *Id.* at 279–282. The court then turned to the question of whether the Nishiyamas' allegation that the defendants acted with gross negligence was sufficient to trigger the protection of the due process clause.

The court first recognized that both the Supreme Court in *Daniels,* and the Sixth Circuit itself if *Wilson v. Beebe,* 770 F.2d 578, 586 (6th Cir.1985), and *Janan v. Trammell,* 785 F.2d 557, 559 (6th Cir.1986), left undecided "the question of whether some-

thing less than an intentional act but more than simple negligence might invoke due process protection." *Nishiyama v. Dickson County,* 814 F.2d at 282. The court then concluded that the allegation of gross negligence in the complaint was sufficient to charge defendants with the "arbitrary use of government power," and thus stated an adequate substantive due process claim.

In embracing gross negligence as conduct sufficient to trigger the guarantees of the fourteenth amendment, the court stated:

> We acknowledge that the term "gross negligence" evades easy definition. In our view, a person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow.

*Id.*

The gross negligence standard in *Nishiyama* appears to be similar to the deliberate indifference standard endorsed by the *Roberts* court. Indeed, in *Roberts,* the court explicitly treated the two standards interchangeably. *Roberts v. City of Troy,* 773 F.2d at 722. *See Matje v. Leis,* 571 F.Supp. 918 (S.D.Ohio 1985) ("deliberate indifference exists when action is not taken in the face of a strong likelihood, rather than a mere possibility that failure to provide care would result in harm to the prisoner," *id.* at 930 (quoting *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1146 (7th Cir.1983)).

 Viewing the facts alleged by plaintiffs to be true, the complaint fails to state a claim to the extent that it alleges that the officers failed to provide proper medical attention to Danese while he was booked and after he hanged himself. The officers failure to provide medical aid in either situ-

---

passed on to a sergeant who failed to notify others of the note and forgot about it when he went off duty. The plaintiff claimed only that the defendants' "negligently failed to protect him from another inmate." *Davidson v. Cannon,* 474 U.S. at 347, 106 S.Ct. at 670. The

court found *Daniels* controlling: "As we held in *Daniels,* the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson v. Cannon,* 474 U.S. at 348, 106 S.Ct. at 671.

ation does not rise to the level of deliberate indifference or gross negligence, but at worst constitutes mere negligence.

■ Plaintiffs' claim that the officers failed to protect Danese from self-injury, on the other hand, is sufficient to state a claim under either standard. Not only did Danese tell the officers that he was considering committing suicide, he also provided the officers with a sufficient basis for believing he would carry out his threat. He advised the officers that he was in pain from a previous injury; he indicated he was concerned about outstanding medical bills and violating his probation; and he cried intermittently and was legally drunk.

Despite these obvious signs, the defendants failed to take any precautionary measures to ensure that Danese could not harm himself. Danese was fully clothed when placed in the middle cell. No extra precaution was taken to monitor Danese's behavior. At the time Danese hung himself, Sgt. Hill, the supervising officer on duty, had left the jail to take his car home.

These facts as alleged are adequate to state a claim of gross negligence. The failure to take any action to protect Danese was unreasonable and disregarded the known risk that Danese was seriously contemplating suicide. The officers must have been aware that there was a strong possibility that Danese would hang himself. Likewise, the facts alleged by plaintiffs are sufficient to sustain a claim of deliberate indifference to Danese's medical needs. There was a strong likelihood, rather than just a mere possibility that Danese would hang himself under the facts contained in plaintiffs' complaint.

It cannot be said that plaintiff can prove no set of facts in support of his claim under either standard which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Madden v. City of Meriden,* 602

F.Supp. 1160, 1163–1164 (D.Conn.1985), (allegations that prisoner was confined without adequate surveillance and without the removal of implements enabling him to take his own life are sufficient to establish eighth amendment violation where prisoner's suicidal tendencies known); *Guglielmoni v. Alexander,* 583 F.Supp. 821, 827–828 (D.Conn.1984) (summary judgment denied in section 1983 case where record permitted inference that prison officials had notice of prisoner's suicidal tendencies and and did not take reasonable steps to provide treatment or prevent suicide); *Matje v. Leis,* 571 F.Supp. 918, 930–931 (S.D.Ohio 1983) (where inmate known to have substantial medical training threatened suicide by feasible mode, personnel cannot disregard the threats and must treat the inmate as potential suicide.)[9]

The result reached by the Court does not conflict with the Supreme Court's admonition that the federal courts should adopt a hands-off attitude toward the execution of policies and practices of prison administration. *Bell v. Wolfish,* 441 U.S. at 547–548, 99 S.Ct. at 1878–1879. *Accord Espinoza v. Wilson,* 814 F.2d 1093, 1096–1097 (6th Cir. 1987). For as the Supreme Court has also recognized, "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution." *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). Additionally, the policy of deference to state officials is less substantial when matters of prison discipline and security are not at issue. *Todaro v. Ward,* 565 F.2d 48, 53–54 (2d Cir.1977).

■ Plaintiffs' allegations that the officers failed to protect Danese from self-injury also states a claim under a second aspect of the "liberty" interest protected by the fourteenth amendment. The liberty

**9.** Defendants rely heavily on the recent opinion in *Williams v. City of Lancaster,* 639 F.Supp 377 (E.D.Penn.1986), in support of the contention that plaintiff has failed to state a substantive due process claim. The facts in *Williams* are strikingly similar to those in this case. Despite the strong similarities, however, *Williams* is clearly distinguishable because, unlike this case, the prison officials in *Williams* had no reason to suspect that the prisoner might commit suicide. *See also Guglielmoni v. Alexander,* 583 F.Supp. at 828 (distinguishing *State Bank of St. Charles v. Camic,* 712 F.2d at 1146, on similar grounds).

interest protected by the substantive aspect of the due process clause includes not only the right to be free from punishment, but also the right to be free from unjustified intrusions on personal security. *Daniels v. Williams*, 474 U.S. at 337, n. 7, 106, S.Ct. at 678, n. 7 (Stevens, J., Concurring); *Youngberg v. Romero*, 457 U.S. 307, 315–316, 102 S.Ct. 2452, 2457–2458, 73 L.Ed.2d 28 (1982).

■ The right to personal security is not extinguished by lawful confinement, *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), and includes a prisoner's right to safe conditions. *Davidson v. Cannon*, 474 U.S. at 350–354, 106 S.Ct. at 672–673 (Blackmum, J. dissenting); *Youngberg v. Romero*, 457 U.S. 307 at 315, 102 S.Ct. 2452 at 2457. In *Youngberg*, the Court held that if professionally acceptable judgment concerning the conditions of confinement is exercised, the infringement of an institutionalized mental patient's liberty interest in safe conditions does not violate the due process clause.

■ The interest in safe conditions clearly applies to the physical conditions of the jail itself over which officers Cardinal, Churchran, Gowsoski, Kenyon and Stein admittedly have no control. The interest in safe conditions also extends, however, to the need for the implementation of precautionary measures in protecting suicidally inclined detainees. The unsafe condition of Danese's confinement did not exist solely because he was not placed in a detoxification cell, because there was a horizontal bar in the cell which was previously used for a suicidal hanging or because the monitor was malfunctioning. The unsafe conditions were also the product of defendants' inaction in protecting Danese despite their awareness of Danese's threats and mental and physical condition.

■ Having already determined that the defendants' actions constitute deliberate indifference and gross negligence, the defendants' conduct certainly cannot be construed as professionally acceptable judgment. *See, e.g., Valentine v. Strange*, 597 F.Supp. 1316 (E.D.Virginia 1984). Accordingly, plaintiffs' complaint also adequately states a claim under the personal security analysis in *Youngberg*. [10]

### B. Asman, Peters and Hill [11]

#### 1. Inadequate training and procedures claim

Plaintiffs do not contend that Asman, Peters, and Hill directly violated Danese's constitutional rights. Rather, they claim that the defendants in their supervisory capacities "implicitly authorized and/or knowingly acquiesced" in the officers unconstitutional conduct by failing to properly train the City's police officers and establish adequate procedures affecting the holding, processing, medical treatment and security of all persons taken into custody. (Am.Compl. ¶¶ 51, 125).

In *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court held that a supervisory official's failure to control his individual subordinates is

---

**10.** Plaintiffs also could have alleged a claim under the procedural aspect of the due process claim. Danese certainly had an interest under the due process clause in preserving his life. *Nishiyama v. Dickson Cty.*, 814 F.2d at 279–280. Additionally, the holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), is not applicable because plaintiffs' claim is not based on a "random and unauthorized act," but rather on an "established state procedure" followed by defendants. *Pantoja v. City of Gonzales*, 538 F.Supp 335, 337 (N.D.Cal. 1982).

Plaintiffs do not challenge the "fundamental fairness of the State's procedures," however, and the complaint, therefore, fails to state a valid due process objection. *Daniels v. Williams*, 474 U.S. at 339, 106 S.Ct. at 679 (Stevens, J., concurring).

**11.** Plaintiffs' complaint includes Mayor Riesterer in the inadequate training and procedures, false imprisonment and defective building claims discussed in this section. Mayor Riesterer did not, however, join in the motion to dismiss filed by the officers.

The extent to which Riesterer, Asman, Peters and Hill possess the authority and responsibility to train the officers, establish station procedures and maintain or recommend changes in the physical conditions of the jail has not been raised by defendants. At trial, however, plaintiffs will, of course, be expected to establish that each official was charged with the responsibility and authority over each of these matters.

not actionable absent a showing that there is a direct causal link between the acts of individual officers and the supervisory defendants. *Id.* at 370–371, 96 S.Ct. at 603–604.

Relying on *Rizzo*, the Sixth Circuit in *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982), set forth the following standard in determining the liability of supervisory personnel:

> Where ... the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is essentially a complete failure to train the police force, or the police force, or training that is so reckless or grossly negligent that future police conduct is almost inevitable ... or would properly be characterized as substantially certain to result, *Rheuark v. Shaw*, 477 F.Supp. 897 (N.D.Texas 1979).

*Id.* at 874 (internal citations omitted).

The *Hays* court also stated: "At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

 In addition to demonstrating a failure to train, there must also exist a causal relationship between the failure to train and the conduct of the police officers. *Rizzo v. Goode*, 423 U.S. at 370–371, 96 S.Ct. at 603–604; *Rymer v. Davis*, 754 F.2d 198, 201 (6th Cir.), *vacated sub nom. City of Shepherdsville v. Rymer*, 473 U.S. 901, 105 S.Ct. 3518, 87 L.Ed.2d 646 (1985), *reaff'd*, 775 F.2d 756 (6th Cir.1985), *cert. denied*, — U.S. ——, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987).

 Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, plaintiffs have failed to allege any facts in support of the contention that inadequate police training existed and was the proximate cause of the unconstitutional treatment of Danese. *Smith v. Yono*, 613 F.Supp. 50, 56 (E.D.

Mich.1985). Accordingly, this claim is DISMISSED WITHOUT PREJUDICE. Plaintiffs have ten days upon receipt of this order to amend their complaint to include facts in support of their claim.

## 2. False Imprisonment and Defective Building Claim

 Unlike the inadequate training and procedures claim, plaintiffs allege that Asman, Peters and Hill directly violated Danese's liberty interest under the fourteenth amendment by falsely imprisoning him in a building they knew was defective.

Plaintiffs' false imprisonment claim fails to state a claim under the fourteenth amendment. Plaintiffs' complaint acknowledges that Danese was legally drunk when he was arrested; plaintiffs do not contend that Danese was improperly arrested. The complaint only alleges that Danese was held against his will and that his imprisonment was accomplished "by actual physical force or by an express or implied threat."

It is questionable whether these allegations are even sufficient to withstand a tort law analysis. In any event, it is clear that defendants' conduct did not deprive Danese of his liberty without due process. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Additionally, the claim also fails under *Daniels* and *Nishiyama*.

A more difficult question, however, is whether the building defects alleged by plaintiffs state a claim under the fourteenth amendment. Specifically, the complaint alleges that defendants were grossly negligent in that they failed to: (1) construct and/or revise the jail to provide functioning visual and audio monitoring of prisoners; (2) remove the top bars from cells; and (3) provide at least one detoxification cell for the detention of chemically impaired persons. (Am.Compl., ¶¶ 97, 98; 106, 107; 123–124).

Viewing these facts as true, the Court finds that plaintiffs have stated a valid fourteenth amendment claim under both

the "punishment" and "personal security" liberty analyses.[12]

In order to state a claim under the punishment analysis, *Roberts*, coupled with *Nishiyama*, require that plaintiffs allege facts which indicate that defendants were deliberately indifferent towards, or grossly negligent in attending to, Danese's need to be protected from committing suicide. In order to state a claim under the personal security analysis in *Youngberg*, plaintiffs need only set forth facts which show that the physical condition of the jail are not acceptable to an expert applying professionally acceptable judgment.

 The lack of a detoxification cell, horizontal bars in a cell, and the failure to provide appropriate visual or audio monitoring of prisoners constitutes both gross negligence and deliberate indifference to the protective needs of chemically impaired detainees such as Danese. These conditions not only demonstrate a total lack of concern for the needs of a detainee known to be suicidally minded—taken as a whole they virtually invite such prisoners to carry out their self-demise. Similarly, such conditions may not meet the minimum standards according to an expert exercising professionally acceptable judgment.

The Michigan Administrative Code Rules cited in the complaint requiring lockups, such as the Roseville Jail, to contain a detoxification cell and monitoring system lend support to the contention that the conditions at the jail do not comport with professionally acceptable judgment. *See Soto v. City of Sacramento*, 567 F.Supp. 662, 681–683 (E.D.Cal.1983). Succinctly, plaintiffs have sufficiently alleged a deprivation of Danese's liberty interest under the due process clause of the fourteenth amendment.

## C. Qualified Immunity

The following claims remain:

(1) *Cardinal, Churchran, Gowsoski, Kenyon, Hill and Stein:* Violation of substantive due process under punishment/personal security analyses

based upon the failure to protect Danese from hanging himself.

(2) *Asman, Peters and Hill:* Violation of substantive due process under punishment/personal security analyses based upon building conditions.

The objective standard for evaluating claims of qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), is now clearly established:

We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738.

In discussing *Harlow*, the Sixth Circuit concluded that:

The trial judge is to apply this purely objective test as a matter of law before discovery occurs. If the law which the defendant is alleged to have violated is clearly established, then the qualified immunity defense should fail and discovery should proceed. If the law is not clearly established, the defendant is immune.

*Windsor v. The Tennessean*, 719 F.2d 155, 165 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). *Accord Arrington v. McDonald*, 808 F.2d 466, 467–468 (6th Cir.1986); *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir.1985), *petition for cert. filed*, 54 U.S.L.W. 3632 (March 14, 1986) (No. 85–1519).

 Police officers perform discretionary functions and are entitled to qualified or "good faith" immunity from suit for damages arising out of their official acts. *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).

Plaintiffs rely on *Ross v. Consumers Power*, 420 Mich. 567, 363 N.W.2d 641

---

12. The fact that the three defects alleged by plaintiffs may also constitute violations of the Michigan Administrative Code is irrelevant under the liberty analysis employed here. Although such violations might give rise to a liberty interest in the context of a procedural due process analysis, as stated in footnote 9, plaintiffs fail to raise a procedural due process claim.

(1984), and other Michigan cases for the proposition that the defendants' violation of several provisions of both the Roseville Police Department Rules and Michigan Administration Code constitute breach of their ministerial duties. These ministerial duties, plaintiffs contend, are established by the Department Rules and Administrative Code. Because the grant of qualified immunity under *Harlow* extends only to officials in the performance of discretionary as opposed to ministerial functions, plaintiffs claim that *Harlow* is inapplicable.

■ Initially, plaintiffs' reliance on principles of immunity under Michigan state tort law is inappropriate. In *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the Supreme Court explicitly noted that conduct that is wrongful under section 1983 cannot be immunized by state law. *Id.* at 284, and n. 8, 100 S.Ct. at 558, and n. 8. *See also McClary v. O'Hare*, 786 F.2d 83, 85 (2d Cir.1986). The principles of *Ross* and its progeny are therefore irrelevant.

■ Turning to federal law, plaintiffs' argument fails under the reasoning in *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). In *Davis*, the Supreme Court held that "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Id.* at 194, 104 S.Ct. at 3019. The Court indicated that breach of a duty created by state regulations does not cause a forfeiture of qualified immunity unless the breach itself gives rise to an action for damages under some provision of the Constitution. This is true, the Court maintained, regardless of whether the regulations create discretionary or ministerial duties. *Id.* at 196 and n. 14, 104 S.Ct. at 3020 and n. 14.

Here, plaintiffs do allege that defendants' breach of the duties set forth in the Department Rules and Administrative Code entitles them to damages. These claims pertain to their tort law remedies, however, and not to their constitutional claims.

Had plaintiffs alleged a procedural due process claim, for example, contending that Danese was, without due process, deprived of a liberty interest created by the Department Rules or Administrative Code, violation of any of these regulations would be an integral part of the constitutional claim. Plaintiffs have not alleged a procedural due process claim, however, and their constitutional claims do not, under any other rationale, encompass the alleged violations of the Department Rules and Administrative Code. Therefore, whether the Department Rules or Administrative Code establish duties "ministerial" in nature is irrelevant, and the qualified immunity defense under *Harlow* is available to the officers.

The only question which the Court must decide, then, is whether Danese's liberty interests in personal security and freedom from punishment under the due process clause of the fourteenth amendment were clearly established on November 9, 1982, the date Danese hanged himself.

### 1. Cardinal, Churchran, Gowsoski, Kenyon, Hill and Stein

■ Although *Roberts* and *Partridge* were decided after Danese's death, the standard of *Estelle* was clearly established before the time in question. *Guglielmoni v. Alexander*, 583 F.Supp. at 829. Additionally, the court in *Roberts* held that the deliberate indifference standard is merely a derivative of the test in *Bell v. Wolfish*, also decided before the incident in question. *Roberts v. City of Troy*, 773 F.2d at 725.

Similarly, the fourteenth amendment liberty interest in freedom from unjustified intrusion upon physical security can be traced back to *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Additionally, it was directly applied to "conditions of confinement" in *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), decided nearly five months before the incident in question. Both liberty interests, therefore, were clearly established as of November 9, 1982; the shield of *Harlow* cannot be extended to protect officers Cardinal, Churchran, Gowsoski, Kenyon or Sergeants Hill or Stein from liability.

## 2. Asman, Peters and Hill

█ Having dismissed plaintiffs' inadequate training and procedures claim with leave to amend, determination of whether *Harlow* immunity is appropriate must be postponed until plaintiffs amend their complaint. The liberty interests implicated by the defective building claims are identical to those implicated in the claim against the officers on duty. The analysis of the applicability of *Harlow* immunity to those officers is equally applicable here.

## III. Police and City of Roseville, Roseville Fire Department and Mayor Riesterer's Motion For Partial Summary Judgment or Dismissal

Defendants raise eight issues in their motion. The first three issues involve plaintiffs' state law claims and need not be considered since the Court has refused to exercise pendant jurisdiction over these claims. (Memorandum Opinion and Order, April 1, 1987). The sixth issue concerns plaintiffs' eighth amendment claim, and the eighth issue seeks dismissal of Fire Chief Ireland because he is an improper party. Both issues are moot, the former as a result of the analysis contained in the Court's response in this opinion to the police officers' motion, the latter because Ireland was dismissed by stipulation of the parties.

The following three issues remain:

(1) Whether the City of Roseville and its Police and Fire Departments can be held "vicariously" liable for any violation of the decedent's civil rights;

(2) Whether plaintiffs' civil rights claims are defective on their face and whether the City, Police and Fire Departments are directly liable for any violations of 42 U.S.C. §§ 1983 and 1985; and

(3) Whether plaintiffs are entitled to equitable relief.

These remaining issues do not involve Mayor Riesterer, and refer only to the City, Police and Fire Departments.

Defendants' motion is characterized as one for partial summary judgment or dismissal. Defendants' supporting brief does not clearly delineate which issues are to be treated under which standard. Because of this lack of clarity and the reference to matters outside the complaint, defendants' motion will be treated as one for summary judgment. F.R.Civ.P. 12(b); *Mozert v. Hawkins City Public Schools,* 765 F.2d 75, 78 (6th Cir.1985).

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Willets v. Ford Motor Co.,* 583 F.2d 852, 855 (6th Cir.1978); *Ghandi v. Police Dept. of City of Detroit,* 747 F.2d 338, 345 (6th Cir.1984); F.R.Civ.Pro. 56. In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as, all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979).

The Court will address the three remaining issues raised in defendants' motion in the context of plaintiffs' sections 1983 and 1985 claims. The request for equitable relief will then be analyzed.

### A. Section 1983

#### 1. City and Police Department

Plaintiffs' eighth amendment claims must be dismissed because Danese had not been convicted of any crime. Defendants need only show that there is no factual dispute that the City and Police Department did not have a custom or policy of inadequate training and deliberate indifference or gross negligence with respect to the physical conditions of the jail, and that the custom or policy did not cause the deprivation of Danese's liberty without due process.

#### a. Inadequate Training

█ Municipal bodies are not immune from section 1983 actions. *Monell v. New*

*York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Nevertheless, under *Monell,* a local government entity may not be sued under section 1983 for an injury inflicted solely by its employees or agents. "[A] municipality cannot be held liable *solely* because it employs a tort feasor—or, in other words, a municipality cannot be held liable under section 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036. (Emphasis in original). Municipal liability under section 1983 can be imposed only where the municipal entity itself causes the constitutional violation.

In *Monell,* the Court held that municipal action taken in the form of written policies or at least decisions adopted and promulgated by a city's lawmakers justifies the imposition of municipal liability under section 1983. "Local governing bodies, therefore, can be sued directly under section 1983 ... where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2035–2036.

The Court further held that a governmental custom, described as a permanent and well settled practice which has not received formal approval through the body's official decision-making channels, if responsible for a deprivation of rights protected by the Constitution, also justifies liability under section 1983. *Id.* at 690–691, 98 S.Ct. at 2036.

Finally, the Court held that a municipal entity may also be liable for the "edicts or acts" of subordinate officials whose conduct may "fairly be said to represent official policy." *Id.* at 694, 98 S.Ct. at 2037–2038.

Relying on this language in *Monell,* the Court in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), held that a Hamilton County Prosecutor's decision instructing deputy sheriffs attempting to serve capiases at a medical clinic to forcibly enter the clinic, directly caused the violation of the clinic owner's

fourth amendment rights. *Id.* at 477–484, 106 S.Ct. at 1297–1300.

In *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), a majority of the Court agreed that proof of a single incident of unconstitutional activity by a nonpolicy making municipal employee is insufficient in itself to establish municipal liability under section 1983. At issue in *Tuttle* was the propriety of an instruction to the jury permitting the jury to find that a police department had a custom or policy of inadequate training based on a single incident of police behavior.

Although evidence other than the single incident was offered to prove an official "policy" of inadequate training, the Court found the instructions invalid because they allowed the jury to impose liability on the basis of the single incident alone. *Tuttle* left unanswered the question whether proof of inadequate training through other evidence may constitute a custom or policy and thus support a section 1983 action. The only guidance is found in a footnote in the plurality opinion:

> [E]ven assuming that such a "policy" would suffice, it is open to question whether a policy maker's "gross negligence" in establishing police training practices would establish a "policy" that constitutes a "moving force" behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policy maker would be required.

*Tuttle,* 471 U.S. at 824, n. 7, 105 S.Ct. at 2436 n. 7.

The Supreme Court granted certiorari in *City of Springfield v. Kibbe,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986), to resolve the question whether a municipality can be held liable under section 1983 for inadequate training of its employees. In a *per curiam* opinion, the writ was denied as improvidently granted. *City of Springfield v. Kibbe,* — U.S. ——, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987).

Justice O'Connor, joined by Chief Justice Rehnquist and Justice Powell dissented. After arguing that the case was properly

before the Court, Justice O'Connor concluded that "[I]n my view the 'inadequacy' of police training may serve as the basis for section 1983 liability only where the failure to train amounts to a reckless disregard for or deliberate indifference to the rights of persons within the City's domain." *Id.* at ——, 107 S.Ct. at 1121. In support of her conclusion, Justice O'Connor acknowledged that several circuits have phrased the requisite degree of fault necessary to hold a municipality liable for inadequate training as "deliberate indifference" or gross negligence "amounting to deliberate indifference." *Id.*

The Sixth Circuit in *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982), held that the reckless or gross negligence standard applicable in determining supervisory liability is also the appropriate standard in ruling on the liability of a local governmental entity. *Id.* at 874.

*Hays* was reaffirmed in *Rymer v. Davis*, 754 F.2d 198, 201 (6th Cir.), *vacated sub nom. City of Shepherdsville v. Rymer*, 473 U.S. 901, 105 S.Ct. 3518, 87 L.Ed.2d 646 (1985), *reaff'd*, 775 F.2d 756 (6th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987).

> In *Hays*, ... this Court joined a number of courts that have interpreted *Monell* to hold that a municupal custom that authorizes or condones police misconduct can be inferred when the municipality has failed to train or been grossly negligent in training it police force....
>
> It is not enough, however, that a plaintiff demonstrate a general failure to train. There must exist a causal relationship between the failure to train and the conduct of the police officer.

*Id.* at 200–201.

▆ Applying these principles to the present case, a material issue of fact exists concerning whether the City and Police De-

partment's failure to train the officers in suicide prevention amounts to gross negligence and whether the failure to train the officers caused the deprivation of Danese's liberty without due process.

As a result of a suicide at the Roseville Jail on February 18, 1977, the Department of Corrections conducted a visit of the jail on June 15, 1977. Two letters were sent by the Department of Corrections to Chief Asman delineating the jail's shortcomings under the rules of the Michigan Administrative Code. Asman responded to the second letter on August 11, 1977. He indicated, in part, that guidelines for screening prisoners for suicidal tendencies had been placed at the Booking Desk. No mention is made of any actual training. Asman did, however, circulate an inter-office memo to the shift commanders and all other officers which contained a paragraph highlighting some of the signs which might indicate that a prisoner is contemplating suicide.

It is unclear from the record the extent to which any of the officers on duty on November 9, 1982, were exposed to the memo circulated by Asman nearly five years before. Additionally, it is unclear whether the screening guidelines were ever placed at the Booking Desk, and even if they were, whether they remained there for five years. Even if the guidelines did still exist, there is no indication as to whether the officers were even required to read them. Finally, plaintiffs contend that several of the officers have testified during their deposition that they were never trained in suicide prevention techniques.

In short, whether the City and the Police Department were grossly negligent in failing to train the police officers is clearly in dispute since the extent of the officers training has not even been established.[13]

**b. Building Defects**

▆ Plaintiffs do not contend that the City or Police Department adopted an offi-

---

**13.** Unlike the motion to dismiss filed by the officers, the present motion for summary judgment requires this Court to take into consideration the exhibits attached to plaintiffs' motion. Accordingly, the defendants' contention that the complaint fails to provide factual support for the "custom or policy" claim cannot be sus-

tained. The exhibits attached to plaintiffs' response to defendants' motion adequately demonstrate that the extent of defendants' failure to adequately train its officers and thus whether the City and Police Department had a custom or policy of inadequate training is in dispute.

cial policy mandating that no detoxification cell be built, that horizontal bars be left in all the cells and that no effective means of monitoring prisoners be established. They do contend, however, that the continued failure to implement the above alterations constitutes a custom under *Monell.*

Prior to the death of Danese, the Department of Corrections repeatedly warned Chief Asman that the absence of a detoxification cell and electric monitoring violated the Michigan Administrative Code. Similar violations were again found to exist following an inspection after Danese's suicide. Reports of these violations were sent to Asman and are attached to plaintiffs' response.

Although the failure to meet state standards is not directly related to the constitutional violation itself, it is indicative of the attitude and pattern of inaction. The following are a few of the questions of fact which must be reserved for trial.

(1) Did the conditions of the jail violate Danese's constitutional rights?

(2) Were City lawmakers aware of the inadequate jail conditions?

(3) If so, did their failure to act constitute a custom under *Monell*?

(4) Were Chief Asman or Inspector Peters in a position to affect changes in the conditions of the jail?

(5) If so, did their failure to act constitute a custom under *Monell* and *Pembaur*?

(6) If there was a "custom" of failing to provide constitutionally adequate facilities, did the "custom" cause the constitutional deprivation?

The City and Police Department's motion for summary judgment must, therefore, be DENIED with respect to the section 1983 claims.

### 2. Fire Department

Each of the individual Fire Department employees have been dismissed by stipulation of the parties. A cause of action may still remain against the Fire Department, however, if its employees' failure to provide proper medical attention deprived Danese of a constitutional right and the Fire Department's failure to train its employees caused the deprivation.

Viewing the complaint in a light most favorable to plaintiffs, the complaint alleges claims under the eighth and fourteenth amendments. (Am.Compl., ¶¶ 111–118, 123). Specifically, the complaint alleges that the Fire Department personnel's gross negligence in their failure to render any C.P.R. or other life saving techniques in the absence of a pronouncement by a licensed physician that Danese was dead proximately caused the death of Danese.

The eighth amendment is inapplicable since Danese had not been convicted. The "punishment" analysis under the fourteenth amendment is also inapplicable because the Fire Department is not connected with the incarceration of persons in violation of the law. Similarly, the "personal security" analysis is not appropriate because the Fire Department is not responsible for the conditions of the jail.

Any claim against the Fire Department must be for the deprivation of life under the substantive aspect of the due process clause. Under *Nishiyama,* defendants' gross negligence must have deprived Danese of a constitutional right without due process.

Defendants fail to allege any facts whatsoever from which the Court could conclude that the ambulance and rescue truck attendants made any attempt to monitor the life-signs of Danese. Accordingly, there is an issue of fact as to whether defendants were grossly negligent in failing to provide any life-saving techniques upon their arrival.

This does not end the inquiry, however, since absence of an issue of fact as to whether the Fire Department caused the deprivation would still make the granting of summary judgment proper. In accordance with *Hays* and *Rymer,* the Fire Department's training of its ambulance and rescue personnel must be grossly negligent in order to establish liability under section 1983. Plaintiffs have provided more than sufficient evidence to place this issue in dispute.

The staffing of the City ambulance service has caused a great deal of disturbance in the City of Roseville. Firefighters apparently resent having to make ambulance runs, and their union has discouraged them from undergoing proper training. Because the staffing of the ambulance service did not meet state standards, the City Council approved the elimination of the ambulance service and contracted to provide advanced paramedics.

In light of the considerable controversy and several recall drives resulting from this decision, the Mayor and City Council voted to restore the basic ambulance service to the Fire Department. Plaintiffs contend that the union again refused to negotiate, and the City was again unable to comply with minimum state licensing requirements.

Under these facts, the failure of the City and Fire Department to maintain an ambulance service with properly trained personnel may rise to the level of gross negligence and is a question of fact for trial.

### B. Section 1985

Defendants contend that plaintiffs have failed to allege sufficient allegations to support a "civil conspiracy." The Court agrees.

Section 1985 deals with conspiracies to interfere with civil rights. The purpose of the statute is to provide a cause of action for individuals deprived of their federal rights by conspiracies of either public officials or private persons. C. Antieu, *Federal Civil Rights Acts*, § 260 (2d ed. 1980).

■ Subsection (1) of section 1985 deals with preventing a United States officer from performing his duty, subsection (2) of section 1985 deals with intimidating a party, witness or juror in a United States court or obstructing justice in any state or territory to deprive a person of equal protection, and subsection (3) of section 1985 deals with depriving a person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws. A complaint brought pursuant to section 1985 must plead facts with specificity; broad conclusory statements unsup-

ported by any factual allegations are not sufficient to support an action under section 1985. *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir.1971). In addition, a claim brought pursuant to 42 U.S.C. 1985(3) must allege (1) the existence of a conspiracy, and (2) some class-based discriminatory animus. *Dunn v. State of Tennessee*, 697 F.2d 121 (6th Cir.1982).

■ Upon review of the complaint and file the Court does not find sufficient factual allegations to support a section 1985 claim. Subsections 1 or 2 of section 1985 do not appear applicable to the instant case. Although a cause of action under section 1985(3) may have been the basis for plaintiffs' claim, they failed to allege any class-based discriminatory animus.

Accordingly, the Court finds that plaintiffs have failed to state a claim under section 1985 and defendants are entitled to summary judgment as a matter of law.

### C. Equitable Relief

■ Plaintiffs request the Court issue an order compelling defendants to comply with Roseville Police Department Rules, Mich.Admin.Code 791.501 *et seq.*, and Mich. Comp.Laws Ann. § 691.1406 (West 1987). Having dismissed the state claims requesting damages for the violation of these provisions, the Court finds it inappropriate to consider a request for injunctive relief based on these same provisions. Accordingly, plaintiffs' request for equitable relief in Count XI is DISMISSED WITHOUT PREJUDICE.

### SUMMARY

The police officers' motion to dismiss is GRANTED with respect to the eighth amendment claim against all defendants and the fourteenth amendment claims against Asman, Peters and Hill for inadequate training and for false imprisonment. It is DENIED with respect to fourteenth amendment claims against Cardinal, Churchran, Gowsoski, Kenyon, Hill and Stein for failing to protect Danese from hanging himself, and against Asman, Peters and Hill for the conditions of the jail. Plaintiffs may, in accordance with this Order, amend their complaint to add adequate fac-

tual support for their claim against Asman, Peters and Hill for inadequate training.

The motion for partial summary judgment or dismissal filed by Mayor Riesterer, the City of Roseville and Fire Department, and joined by the Police Department is GRANTED with respect to the section 1985 claims and the request for equitable relief, and DENIED with respect to the section 1983 claims.

IT IS SO ORDERED.